ROBINSON, Appellee and Cross–Appellant,

v.

ROBINSON, Appellant and Cross–Appellee.

[Cite as *Robinson v. Robinson,* 168 Ohio App.3d 476, 2006-Ohio-4282.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 05–CA–95.

Decided Aug. 18, 2006.

478

Valerie R. Wilt, for appellee and cross-appellant.

James D. Marshall, for appellant and cross-appellee.

GRADY, Presiding Judge.

{¶ 1} This is an appeal and a cross-appeal from postdecree orders of the domestic relations court.

{¶ 2} Todd A. Robinson and Crystal Robinson were divorced on April 4, 2004. Todd[1] was ordered to pay support for the parties' two minor children. The amount of support was determined after crediting Todd with $8,600 in annual support that he pays for another child. The decree also awarded Crystal one-half of the amount that had accumulated in Todd's deferred-compensation account

---

1. For clarity and convenience, the parties are identified by their first names.

during the marriage, from August 25, 2001, to March 26, 2004. The court found that the value of the plan as of June 30, 2002, was $9,953.80.

{¶ 3} Several months after the decree, Crystal filed charges in contempt, alleging that Todd had withdrawn funds from his deferred-compensation account while their divorce action was pending, largely exhausting the balance and in violation of temporary orders that the court had entered pursuant to Civ.R. 75(I). Crystal further alleged that Todd had failed to pay her the marital share of the account that she was awarded in the decree.

{¶ 4} Todd also filed a postdecree motion, asking the court to modify the child-support obligation imposed on him in the decree. Todd alleged that his income had since been reduced by a change of jobs and that the decline in income is a change of circumstances that warrants modification for purposes of R.C. 3119.79.

{¶ 5} The motions were referred to a magistrate. The magistrate heard evidence that Todd had quit his prior job with the city of Springfield for health reasons and had since taken a lower-paying position as a security guard. The magistrate recalculated Todd's child-support obligation accordingly, but in the process, the magistrate failed to credit Todd with any support that he pays for another child.

{¶ 6} On Crystal's motion, the magistrate found that Todd withdrew monies from his deferred-compensation account while the divorce action was pending in 2003 on three occasions, in violation of the court's temporary orders, and that the sum of those withdrawals was $10,864.13. The magistrate found Todd in contempt and ordered him to pay Crystal one-half of that amount, $5,432.

{¶ 7} Both parties filed objections to the magistrate's decision. The trial court overruled the objections and adopted the decision. Todd filed a notice of appeal. Crystal filed a notice of cross-appeal.

## TODD'S FIRST ASSIGNMENT OF ERROR

{¶ 8} "The court erred in calculating defendant's child support obligation where the court did not take into account support paid by defendant for other children."

{¶ 9} At the April 11, 2005 hearing before the magistrate on his motion to modify his child-support obligation, Todd was unable to recall the amount of annual support that he pays pursuant to court order for his other child. Therefore, the magistrate entered "0.00" at item 9 of the Child Support Worksheet, which is titled "Annual court-ordered support paid for other children." The trial court overruled Todd's objection to the zero credit, finding that Todd had failed to provide the magistrate the information necessary for the credit.

{¶ 10} R.C. 3119.79(C) provides that if the court finds a substantial change of circumstances not contemplated when the last support order was issued, "the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet through the line establishing the actual annual obligation," subject to the deviation factors identified in R.C. 3119.22.

{¶ 11} Rule 14 of the Local Rules of Practice of the Domestic Relations Division of the Court of Common Pleas of Clark County states:

{¶ 12} "All motions to modify prior orders of the court shall contain a statement of the order sought to be modified, nature of the modification sought and the specific change in circumstances which justify modification. Motions to modify child support orders shall be accompanied by completed child support calculation sheets."

{¶ 13} The motion to modify his child-support obligation that Todd filed on December 1, 2004, merely alleges that "there has been a change in circumstances that warrant this modification." The particular circumstances are not identified. No child-support worksheet was filed with the motion.

{¶ 14} Todd's failure to comply with the court's Local Rule 14(C) by filing a child-support worksheet containing the credit for other support he claims he is due, coupled with Todd's inability to offer evidence of what he pays for his other child, warranted the magistrate's failure to award Todd a credit for other support. Likewise, the domestic relations court did not abuse its discretion when it overruled Todd's objection to the magistrate's failure to award the credit.

{¶ 15} Todd contends in his brief that when his objection to the magistrate's decision was heard by the court, he proffered evidence of the amount of support he pays for the other child, pursuant to Civ.R. 53(E)(4)(b). However, as Todd concedes, the matter was heard in chambers, and no record was made of the proceeding. Unless a party requests that proceedings be recorded, the court is not required to record the proceedings. R.C. 2301.20. Therefore, any prejudice that Todd suffered from the lack of a record is chargeable to him.

{¶ 16} The domestic relations court's final order adopting the magistrate's decision was filed on August 10, 2005. On September 9, 2005, Todd filed his notice of appeal from that judgment, and on that same date, he filed a motion for reconsideration in the trial court, asking it to reconsider its denial of a credit for the support that Todd claims he pays for his other child. Todd also asked the court to reconsider its decision to order him to pay Crystal $5,432 for his violation of the court's temporary orders.

{¶ 17} The Ohio Rules of Civil Procedure make no provision for a motion for reconsideration of a final order. Therefore, any order the court might have entered on the motion for reconsideration that Todd filed, granting or denying it, would be a legal nullity. *Pitts v. Ohio Dept. Of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105. On appeal, any such order or judgment must be vacated for a lack of jurisdiction. Id. Counsel are urged to avoid such feckless applications.

{¶ 18} Nevertheless, the domestic relations court may, in its discretion, elect to treat such an application as a Civ.R. 60(B) motion to vacate a prior order. The domestic relations court was deprived of jurisdiction to do that by the notice of appeal that Todd filed. Following this decision, Todd may ask the court to treat his application as a Civ.R. 60(B) motion.

{¶ 19} Finally, we strongly urge counsel to better observe the requirement of App.R. 16(A)(7) that arguments in briefs cite "parts of the record on which (a party) relies." The preferred practice is to cite the docket number for each document assigned by the clerk pursuant to App.R. 10(B). Merely referring in the argument to a motion otherwise identified in the statement of the case with reference to its filing date is inadequate and unhelpful, especially in a case of this kind, in which numerous motions were filed.

{¶ 20} Todd's first assignment of error is overruled.

## TODD'S SECOND ASSIGNMENT OF ERROR

{¶ 21} "The trial court erred by upholding the magistrate's order that defendant pay to plaintiff the sum of $5,432.00."

{¶ 22} Todd made three withdrawals from his deferred-compensation account while the divorce action was pending, in violation of the court's temporary orders. Todd's conduct was the basis for the court's subsequent finding of contempt and its further order that he pay Crystal $5,432, representing one-half of the total amount he withdrew.

{¶ 23} Todd argues that the court's order exceeded the terms of its decree because there was no evidence that the monies he withdrew represented an increase in the value of the account "during the marriage," that is, between August 25, 2001, and March 26, 2004, and the decree awarded Crystal only her one-half share of that unspecified amount. Todd also argues that the court erred in so ordering because it had not reserved jurisdiction to modify the property-division provision of its divorce decree, and that is essentially what it did when the court ordered Todd to pay Crystal $5,432.

{¶ 24} "A division or disbursement of property * * * made (pursuant to a divorce decree) is not subject to future modification by the court." R.C. 3105.171(I). Therefore, the court could not "reserve jurisdiction" to modify the award that it made in the decree. However, that is not what the court did.

{¶ 25} When the court overruled Todd's objection and adopted the magistrate's decision awarding Crystal $5,432, the court stated:

{¶ 26} "[C]ounsel for Ms. Robinson correctly points out that Mr. Robinson was withdrawing money from this account for his own personal use during the pendency of this litigation in violation of this Court's temporary restraining orders prohibiting such action which was essentially used to pay his then girlfriend's living expenses. In consideration of this fact, Plaintiff's counsel also correctly points out that it is nearly impossible to show, based upon the evidence before the Magistrate, what appreciation or depreciation took place on the marital components of the deferred compensation plan since Mr. Robinson's voluntary withdrawals of money from this account were not discovered until a later date. She argues that equity dictates that he not benefit by his own voluntary failure to disclose the withdrawals which he made from this account, in violation of the Court's prior Orders, and upon conducting an independent review of the record concerning this issue, this Court agrees with the Plaintiff."

{¶ 27} The court didn't award Crystal $5,432 in its postdecree order. Rather, the court ordered Todd to pay Crystal that amount as a civil penalty for his plain contempt of the court's temporary orders, a result of which was to prevent the court from determining more precisely how much of the account Crystal would have received based on the right that was awarded her in the decree. The purpose of contempt is to secure compliance with the court's lawful orders. *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 56 O.O.2d 31, 271 N.E.2d 815. Courts possess an inherent power to punish the disobedience of its order through contempt proceedings and civil penalties fashioned to avoid the prejudicial effects of a contemnor's defalcations. We find no abuse of discretion.

{¶ 28} Todd's second assignment of error is overruled.

## CRYSTAL'S CROSS–ASSIGNMENT OF ERROR

{¶ 29} "The trial court abused its discretion when it failed to impute income to Mr. Robinson, who is voluntarily underemployed."

{¶ 30} Per R.C. 3119.02, the court must calculate child-support obligations in accordance with the basic child-support schedule and applicable worksheet and other provisions in R.C. 3119.02 through 3119.24. The worksheets require a determination of each party's annual gross income. In addition to an obligor's actual income from employment and other sources, the court may credit

an obligor with "potential income." That includes any amount of "[i]mputed income that the court * * * determines the parent would have earned if fully employed as determined from the following criteria:

{¶ 31} "(i) The parent's prior employment experience;

{¶ 32} "(ii) The parent's education;

{¶ 33} "(iii) The parent's physical and mental disabilities, if any;

{¶ 34} "(iv) The availability of employment in the geographic area in which the parent resides;

{¶ 35} "(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

{¶ 36} "(vi) The parent's special skills and training;

{¶ 37} "(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

{¶ 38} "(viii) The age and special needs of the child for whom child support is being calculated under this section;

{¶ 39} "(ix) The parent's increased earning capacity because of experience;

{¶ 40} "(x) Any other relevant factor."

{¶ 41} Reviewing the record with respect to R.C. 3119.01(C)(11), the magistrate found:

{¶ 42} "The evidence presented is relevant to many of these factors. The defendant holds a college degree. He was employed by the Springfield Police Department as a criminologist for several years where he had earned as much as $50,000, which is some evidence of his recent income. Also presented was evidence of other criminologist positions recently applied for by the defendant for which he was rejected. The defendant is 34 years old. There is evidence that toward the end of his employment with the Springfield Police Department and in pertinent part his stated rationale for leaving is the workload increased significantly, he was refused an increase in pay for the extra workload, and defendant developed job related stress indicated by insomnia, increased heart rate and high blood pressure. It is concluded that the defendant is not voluntarily underemployed."

{¶ 43} On Crystal's objection to the magistrate's decision on the matter of Todd's alleged voluntary unemployment, the court held that the objection was "not well-taken."

{¶ 44} We have held, "The fact that the obligor's income has been reduced as a result of his or her voluntary choice does not necessarily demonstrate voluntary underemployment. The test is not only whether the change was voluntary, but

also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned." *Woloch v. Foster* (1994), 98 Ohio App.3d 806, 811, 649 N.E.2d 918.

{¶ 45} Crystal argues that because of his education and experience, Todd's decision to change jobs, which reduced his income substantially, was not made with due regard for the needs of their two children. Crystal also argues that the trial court's decision crediting Todd's reasons for quitting his former job violates the rule of *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218.

{¶ 46} In *Rock,* the Supreme Court held:

{¶ 47} "Whether a parent is 'voluntarily underemployed' within the meaning of R.C. 3113.215(A)(5),[2] and the amount of 'potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion." Id. at syllabus.

{¶ 48} In *Rock,* a domestic relations court found that an obligor was voluntarily underemployed. The obligor argued that voluntary underemployment exists only when a person has purposely reduced earnings in an effort to reduce his or her child-support obligation. *Rock* rejected that contention, noting that R.C. 3113.215(A)(5) [R.C. 3119.01(C)(11) ] imposes no such burden of proof. The court wrote that the primary design and purpose of the statute are to protect and insure the best interests of the children and that "[t]he parent's subjective motivations for being *voluntarily* unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." (Emphasis sic.) Id. at 111, 616 N.E.2d 218.

{¶ 49} Crystal argues that the injunction in *Rock* against considering an obligor's subjective reasons stands for the proposition that the domestic relations court may not, as the court did in the present case, credit the reasons an obligor gives for quitting a higher-paying job for one that pays less, and that the trial court therefore abused its discretion when it found that Todd's reasons were sufficient to avoid a finding of voluntary underemployment. We do not agree. *Rock* merely holds that the court is not required to determine whether it was the obligor's subjective purpose to avoid his support obligation. Instead, the only reasons relevant to a finding of voluntary underemployment are those set out in R.C. 3119.01(C)(11)(i) through (x), concerning which the court is permitted in its discretion to give an obligor's stated reasons for changing jobs whatever weight it wishes.

---

2. This section has since been repealed, and now appears in R.C. 3119.01(C)(11).

{¶ 50} Todd testified that he was employed as a criminologist in the Springfield Police Division's Crime Laboratory when the prior child-support order was issued. When the director of the lab retired, Todd was required to do the work of both positions, which added to his burden considerably. When he was told that he would be given no assistance, Todd sought employment with several other police departments as a criminologist, but without success. Prior contempt orders caused him to lose his commission as a sheriff's deputy, depriving him of the extra income he had been able to earn during off-hours. He began to experience an inability to sleep, elevated blood pressure, and a heart rate well above normal. He sought treatment from a physician, who prescribed medication to help him sleep, and he also sought consultation with a psychologist. Todd testified that after two years, pressures of the job and his related health problems caused him to quit.

{¶ 51} We find no abuse of discretion in the trial court's finding that Todd was not voluntarily underemployed. He sought comparable employment that he testified would pay him as much or more, but unsuccessfully. The health problems his job caused him over a two-year period were serious, and he quit his job to relieve himself of their effects. The court acted within the discretion conferred on it by R.C. 3119.01(C)(11), as interpreted by *Rock*, in refusing to impute income to Todd on a finding of voluntary underemployment.

{¶ 52} Crystal's cross-assignment of error is overruled. The judgment of the domestic relations court is affirmed.

Judgment affirmed.

WOLFF and FAIN, JJ., concur.