[Cite as *Miller v. Cass*, 2010-Ohio-1930.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

JANE MILLER, ET AL.,

    PLAINTIFFS-APPELLANTS,          CASE NO. 3-09-15

    v.

DOLORES CASS, ET AL.,          O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Crawford County Common Pleas Court
Trial Court No. 09-CV-0222

**Judgment Affirmed**

Date of Decision:    May 3, 2010

APPEARANCES:

    *W. Patrick Murray*  for Appellants

    *Victor D. Radel*  for Appellees

Case No. 3-09-15

**PRESTON, J.**

{¶1} Plaintiffs-appellants, Jane Miller and Louise Murray (collectively "appellants"), appeal the Crawford County Court of Common Pleas' judgment entry dismissing their complaint against defendants-appellees, Delores Cass, individually (hereinafter "Cass"), Dolores Cass as Trustee of the Doris Pittenger Trust, Dolores Cass as Trustee of the Dolores Cass Trust, Doris Pittenger, Trustee of the R.M. Pittenger Trust and Joint Trust (hereinafter "Doris") (collectively "appellees"). For the reasons that follow, we affirm.

{¶2} Jane and Louise are Reid M. Pittenger's (hereinafter "Reid") daughters from his first marriage, and Cass is Doris' only daughter from a previous marriage. On July 14, 1992, when Reid was approximately eighty-nine (89) years of age, Cass helped Reid select a Columbus attorney to prepare the Reid M. Pittenger Trust (hereinafter "R.M. Trust") and Reid's last will and testament. (First Amended Complaint, Doc. No. 10, at ¶¶1, 10); (Plaintiffs' Exs. 1, 3). Reid's will disposed of his real and personal property by reference to the R.M. Trust. Reid and Doris served as co-trustees of the R.M. Trust. On September 10, 1992, Reid and Doris created the Reid M. Pittenger and Doris H. Pittenger Joint Revocable Living Trust (hereinafter "Joint Trust"). (First Amended Complaint, Doc. No. 10, ¶1); (Plaintiffs' Ex. 2). Reid and Doris served as co-trustees of the Joint Trust.

{¶3} On July 3, 2002, Reid died, and his estate was never probated as all his assets were in the R.M. Trust. (First Amended Complaint, Doc. No. 10, at ¶3); (Plaintiffs' Exs. 1, 3). Doris served as trustee of the R.M. Trust and the Joint Trust thereafter until her death on January 9, 2009. (First Amended Complaint, Doc. No. 10, at ¶4).

{¶4} On April 24, 2009, Jane and Louise filed a complaint against appellees alleging, in pertinent part, that: Trustee Doris ignored the mandates of the trusts and illegally and improperly removed hundreds of thousands of dollars from the trusts and deposited this money into trusts and funds for which Cass was the beneficiary; Cass controlled Trustee Doris' actions as she was in her eighties (80's) and was financially unsophisticated; Cass took control of Reid and Doris' affairs when they were mentally feeble because of age; and Trustee Doris, under the control of Cass, committed several breaches of her fiduciary duties, including: illegally diverting funds and self-dealing, negligent management of assets, breach of the trust agreement, spoliation of records, plundering trust assets, failing to follow the grantor's instructions, and conversion. (Complaint, Doc. No. 1); (First Amended Complaint, Doc. No. 10).

{¶5} On May 19, 2009, appellees filed a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. (Doc. No. 5). Appellees alleged that the

complaint had to be dismissed against Trustee Doris as she was deceased, and that the allegations against Cass fail because she owed Jane and Louise no duty. (Id.).

**{¶6}** On June 25, 2009, Jane and Louise filed a reply to the motion to dismiss arguing that Cass could be held liable since she was a 'de facto' trustee. (Doc. No. 8). On June 30, 2009, appellees filed a reply brief in support of their motion to dismiss arguing that: Cass was not a trustee; Cass had no privity of contract with Jane and Louise; and that Jane and Louise never alleged that Cass was a 'de facto' trustee in the complaint. (Doc. No. 9).

**{¶7}** On July 2, 2009, Jane and Louise filed their first amended complaint with substantially the same allegations, but added allegations with regard to the appointment of a commissioner for Doris' estate. (Doc. No. 10).

**{¶8}** On July 9, 2009, appellees filed a Civ.R. 12(B)(6) motion to dismiss the amended complaint arguing that: Doris was not a proper party as she was deceased; Cass was not liable as the complaint failed to set forth any duty; and Doris was not acting as Cass' agent. (Doc. No. 12).

**{¶9}** On July 16, 2009, Jane and Louise filed a response to the motion to dismiss arguing that: Cass was a 'de facto' trustee as she controlled Doris' finances and decisions; and Cass was liable for conversion and constructive trust. (Doc. No. 14).

{¶10} On July 27, 2009, appellees filed a reply arguing that: Cass was not liable for conversion or constructive trust since Doris did not commit any "wrongful act" as she had absolute discretion to manage the trust funds. (Doc. No. 15).

{¶11} On August 6, 2009, Jane and Louise filed a sur reply to appellees' motion to dismiss arguing that: Cass exerted undue influence upon Reid when he was executing the trust agreements and his will; Cass controlled Doris and aided and abetted her in breaching her fiduciary duties; Cass supervised Doris' negligent handling of trust assets and ignoring trust provisions; Cass recklessly and intentionally assisted Doris in ignoring the trust provisions; Cass plundered trust assets for her own benefit; and Cass converted trust funds. (Doc. No. 18).

{¶12} On August 10, 2009, appellees filed a response arguing that the terms of the trust agreement, attached to the complaint, provided Doris with unfettered discretion to manage the trust funds; and therefore, Jane and Louise's complaint fails to allege any wrong. (Doc. No. 20).

{¶13} On August 12, 2009, appellees filed a motion to supplement their Civ.R. 12(B)(6) motion asserting that Jane and Louise withdrew their motion to reopen Doris' estate. (Doc. No. 21)

{¶14} On August 14, 2009, Jane and Louise filed a motion to accept supplemental documents in response to appellees' Civ.R. 12(B)(6) motion wherein

they informed the trial court that an application for the appointment of an administrator for Doris' estate was pending in Crawford County Probate Court. (Doc. No. 22). That same day, Jane and Louise also filed a motion to amend their complaint to name the administrator of Doris' estate as a party defendant. (Doc. No. 23)

{¶15} On September 3, 2009, the parties entered a stipulated order wherein they agreed that: Jane and Louise will move the Crawford County Probate Court to reopen the Estate of Doris H. Pittenger, and defendant Cass will not oppose the motion and will accept appointment as administrator; the plaintiffs had filed a motion to amend the complaint to name the estate in these proceedings; that the trial court has all the legal issues before it, and the appointment of an administrator does not affect the legal issues herein; neither party will appeal the trial court's ruling on the basis that the estate is not properly before the court; the trial court's ruling is binding upon all parties, including the estate of Doris Pittenger; and oral argument as to the motion should be waived. (Doc. No. 24).

{¶16} On September 9, 2009, the trial court granted defendants' Civ.R. 12(B)(6) motion to dismiss finding that the plaintiffs could not maintain an action for conversion or constructive trust because the trust language gave Doris discretion in handling the trust assets and exempted her from liability. As such,

Jane and Louise failed to allege any "wrongful" act done by Doris; and they could not recover against Cass if they could not recover against Doris. (Doc. No. 25).[1]

{¶17} On September 21, 2009, Jane and Louise filed a motion for reconsideration. (Doc. No. 27). On October 2, 2009, Jane and Louise filed a notice of appeal (Doc. No. 30). Jane and Louise now appeal raising eleven assignments of error for our review. We have elected to combine appellants' assignments of error where appropriate.

### ASSIGNMENT OF ERROR A

**THE COURT ERRONEOUSLY IGNORED THE COMPLAINT AND MADE RULINGS OF FACT AND LAW NOT RELEVANT UNDER A RULE 12 MOTION.**

### ASSIGNMENT OF ERROR H

**THE COURT ERRED IN IMPROPERLY CREATING AN AFFIRMATIVE DEFENSE FOR A DEFENDANT IN RULING ON A RULE 12(B)(6) MOTION.**

### ASSIGNMENT OF ERROR G

**THE TRIAL COURT ERRED IN IGNORING THE ALLEGATIONS OF UNDUE INFLUENCE AND DURESS AND DISMISSED PLAINTIFFS' COMPLAINT ON THE SAME.**

{¶18} In assignment of error A, Jane and Louise argue that the trial court failed to apply the applicable standards under Civ.R. 12(B)(6) when ruling on the

---

[1] On October 30, 2009, the trial court entered a nunc pro tunc entry clarifying that its judgment dismissed the complaint and the case as to all defendants.

motion. Specifically, Jane and Louise argue that the trial court failed to note any deficiency in the complaint in its ruling, and that they should be allowed to present evidence on the validity of the trust documents as well as the manner by which the trusts were administered. In assignment of error H, plaintiffs allege that the trial court improperly considered Trustee Doris Pittenger's affirmative defense of a release from liability under the R.M. Trust. In assignment of error G, plaintiffs argue that the trial court erred by dismissing the complaint as to its allegations of undue influence in the creation of the trust documents. We disagree.

{¶19} "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378, citing *Assn. for the Defense of the Washington Local School Dist. v. Kiger* (1989), 42 Ohio St.3d 116, 117, 537 N.E.2d 1292, 1293. For that reason, a trial court may not rely upon evidence or allegations outside the complaint when ruling on a Civ.R. 12(B)(6) motion. *State ex rel. Fuqua v. Alexander* (1997), 79 Ohio St.3d 206, 207, 680 N.E.2d 985. However, "[a] copy of any written instrument attached to a pleading is a part of the pleading for all purposes"; and therefore, the trial court may consider attached written instruments for purposes of a motion to dismiss. Civ.R. 10(C); *Davis v. Widman*, 184 Ohio App.3d 705, 2009-Ohio-5430, 922 N.E.2d 272, ¶18, citing *Keenan v. Adecco Emp. Servs., Inc.*, 3d

Dist. No. 1-06-10, 2006-Ohio-3633, ¶¶8-9, citing *Slife v. Kundtz Properties, Inc.* (1974), 40 Ohio App.2d 179, 185-86, 318 N.E.2d 557. "If the plaintiff decides to attach documents to his complaint, which he claims establish his case, such documents can be used to his detriment to dismiss the case if they along with the complaint itself establish a failure to state a claim." *Adlaka v. Giannini*, 7th Dist. No. 05 MA 105, 2006-Ohio-4611, ¶34, citing *Aleman v. Ohio Adult Parole Auth.* (Apr. 24, 1995), 4th Dist. No. 94CA17. "Dismissals under Civ.R. 12(B)(6) are proper where the language of the writing is clear and unambiguous." *Keenan*, 2006-Ohio-3633, at ¶9.

{¶20} To sustain a Civ.R. 12(B)(6) dismissal, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *LeRoy v. Allen, Yurasek, & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254, ¶14, citing *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶11. Additionally, the complaint's allegations must be construed as true, and any reasonable inferences must be construed in the nonmoving party's favor. Id., citing *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, ¶11; *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 418, 650 N.E.2d 863.

**{¶21}** When reviewing a Civ.R. 12(B)(6) decision, this Court must determine whether the complaint's allegations constitute a statement of a claim under Civ.R. 8(A). *Keenan,* 2006-Ohio-3633, at ¶7. "All that the civil rules require is a short, plain statement of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it is based." *Patrick v. Wertman* (1996), 113 Ohio App.3d 713, 716, 681 N.E.2d 1385, citing *Kelley v. E. Cleveland* (Oct. 28, 1982), 8th Dist. No. 44448. See, also, Civ.R. 8(A)(1). When filing a claim pursuant to Civ.R. 8(A), "[a] party is not required to "plead the legal theory of recovery"; furthermore, "a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief." *Illinois Controls, Inc. v. Langham* (1994), 70 Ohio St.3d 512, 526, 639 N.E.2d 771. Indeed, "that each element of [a] cause of action was not set forth in the complaint with crystalline specificity" does not render it fatally defective and subject to dismissal. *Border City Sav. & Loan Ass'n v. Moan* (1984), 15 Ohio St.3d 65, 66, 472 N.E.2d 350. See, also, *Parks v. Parks* (Mar. 5, 1998), 3d Dist No. 1-97-60, at *2. However,

> **the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.**

*Fancher v. Fancher* (1982), 8 Ohio App.3d 79, 83, 455 N.E.2d 1344, citing 5 Wright & Miller, Federal Practice & Procedure: Civil (1969), at 120-123, Section 1216.

**{¶22}** This Court reviews de novo a trial court's decision to grant or deny a Civ.R. 12(B)(6) motion. *RMW Ventures, L.L.C. v. Stover Family Invest., L.L.C.*, 161 Ohio App.3d 819, 2005-Ohio-3226, 832 N.E.2d 118, ¶8, citing *Hunt v. Marksman Prod.* (1995), 101 Ohio App.3d 760, 762, 656 N.E.2d 726. This Court may substitute, without deference, its judgment for that of the trial court when reviewing de novo. *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808.

**{¶23}** In its judgment entry, the trial court set forth the correct Civ.R. 12(B)(6) standard when ruling on the motion to dismiss. (Sept. 9, 2009 JE, Doc. No. 25). Therefore, contrary to plaintiffs' assertions the trial court applied the correct standard when ruling upon the motion to dismiss. As such, plaintiffs' assignment of error A lacks merit.

**{¶24}** Plaintiffs further allege that the trial court created an affirmative defense by improperly considering the release from liability provided to trustee Doris Pittenger under the terms of the R.M. Trust. This argument too lacks merit because the trial court may consider the trust language for purposes of a motion to dismiss. Civ.R. 10(C); *Davis*, 2009-Ohio-5430, at ¶18, citing *Keenan*, 2006-Ohio-

3633, at ¶¶8-9, citing *Slife*, 40 Ohio App.2d at 185-86. As such, plaintiffs' assignment of error H lacks merit.

**{¶25}** Next, plaintiffs assert in assignment of error G that the trial court erred by dismissing their claim of undue influence in the creation of the trust agreements.

> **A trust is void to the extent its creation was induced by fraud, duress, or undue influence. As used in this section, "fraud," "duress," and "undue influence" have the same meanings for trust validity purposes as they have for purposes of determining the validity of a will.**

R.C. 5804.06. "The elements of undue influence include the following: (1) a susceptible party; (2) another's opportunity to exert influence; (3) the fact of improper influence exerted or attempted; and (4) the result showing the effect of such improper influence." *Lah v. Rogers* (1998), 125 Ohio App.3d 164, 171, 707 N.E.2d 1208, citing *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 65, 567 N.E.2d 1291; *West v. Henry* (1962), 173 Ohio St. 498, 510-11, 184 N.E.2d 200. "Undue influence" requires a two-step inquiry: first, it must be determined whether the transaction was the result of influence brought to bear upon the susceptible party; and second, it must be determined whether that influence was actually "undue." Id., citing *Dillon*, 58 Ohio St.3d at 68.

**{¶26}** The Ohio Supreme Court defined "undue influence" in *West v. Henry* as follows:

> **Similarly, 'undue influence to avoid a will, must so overpower and subjugate the mind of the testator as to destroy his free agency and make him express the will of another rather than his own, and the mere presence of influence is not sufficient. Undue influence must be present or operative at the time of the execution of the will resulting in dispositions which the testator would not otherwise have made.' 94 C.J.S. Wills § 224, p. 1064.**

> **General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will.** *If the will or codicil, as finally executed, expresses the will, wishes and desires of the testator, the will is not void because of undue influence.*

> **\* \* \***

> *The mere existence of undue influence, or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence must be actually exerted on the mind of the testator with respect to the execution of the will in question. It must be shown that such influence, whether exerted at the time of the making of the will or prior thereto, was operative at the time of its execution or was directly connected therewith.* **It must be shown that undue influence was exercised with the object of procuring a will in favor of particular parties.**

173 Ohio St. at 501 (emphasis in original). "To determine whether the particular influence was undue, a court must consider 'whether the influence was reasonable, given all the prevailing facts and circumstances.' " *Jackson v. Jackson*, 3d Dist. No. 11-07-11, 2008-Ohio-1482, ¶11, quoting *Dillon*, 58 Ohio St.3d at 68.

{¶27} The complaint herein alleged, in pertinent part, that:

> **Dolores Cass took control of the affairs of Reid Pittenger and Doris Pittenger at a time in their lives when they were mentally feeble because of age. She convinced Reid Pittenger to abandon his long-time attorney in Galion, Ohio and to allow her to direct**

- 13 -

> **all matters concerning his estate. She selected a Columbus attorney unknown to him and directed him on the types of testamentary and legal instruments he would need. She convinced him that he no longer needed the counsel and advice from his attorney son-in-law. She also directed and controlled Doris Pittenger in all of her legal matters and actions.**

(First Amended Complaint, Doc. No. 10, at ¶10.). Construing this allegation in a light most favorable to plaintiffs as the non-moving party, we cannot conclude the complaint alleges a cause of action for undue influence. Although it appears from the complaint that plaintiffs allege that Cass convinced her step-father to abandon his "long-time" local attorney and seek different counsel, the complaint fails to allege that Reid or Doris' will was overcome and that they did not exercise their independent judgment. *Henry*, 173 Ohio St. at 501. Furthermore, and importantly, Plaintiffs failed to allege that Cass' influence "result[ed] in dispositions which the testator[s] would not otherwise have made." Id. The only allegations of negative 'effects' of Cass' influence upon the grantors concern the *administration* of the trust agreements by Trustee Doris Pittenger, not, as is required, allegations that Cass' influence affected the *execution* of the trust agreements by Reid and Doris Pittenger. *Henry*, 173 Ohio St. at 501. In fact, the testamentary documents reflect that Reid gave plaintiffs an interest in his home and contingent interests in those assets which remained in the R.M. and Doris Pittenger Trusts. (Plaintiffs' Exs. 1-3). Furthermore, as plaintiffs concede, Cass was not a named beneficiary of the R.M. Trust or a devisee under Reid's will.

(Plaintiffs' Exs. 1, 3). Finally, although Reid may have not sought his son-in-law's advice or counsel, he did name him as the first contingent executor of his will and the successor trustee of the R.M. Trust. (Plaintiffs' Exs. 1, 3). Viewed in a light most favorable to plaintiffs, we conclude that the allegations made in the complaint amount, at best, to allegations of "general influence" made by a daughter to her mother and step-father, not "undue influence" as is required. *Henry*, 173 Ohio St. at 501.

{¶28} For all these reasons, plaintiffs' assignments of error A, H, and G are overruled.

## ASSIGNMENT OF ERROR J

**THE COURT ERRED IN UTILIZING TWO PARAGRAPHS OUT OF CONTEXT IN DISMISSING PLAINTIFFS' COMPLAINT. IT FURTHER ERRED IN IMPROPERLY INTERPRETING THE DISCRETIONARY POWERS GRANTED UNDER THE TRUST DOCUMENTS.**

## ASSIGNMENT OF ERROR B

**THE COURT MISSTATED THE LAW ON UNJUST ENRICHMENT/CONSTRUCTIVE TRUST AND ERRONEOUSLY DISMISSED THE COMPLAINT ON THAT CAUSE.**

## ASSIGNMENT OF ERROR C

**THE COURT ERRED IN DISMISSING PLAINTIFFS' COMPLAINT WHICH ALLEGED CONVERSION OF TRUST PROPERTY BY THE TRUSTEE AND HER DAUGHTER.**

## ASSIGNMENT OF ERROR F

**THE TRIAL COURT ERRED IN DISMISSING MULTIPLE CLAIMS AGAINST A THIRD PARTY WHO ALLEGEDLY ENGAGED IN IMPROPERLY CAUSING TRUST PROPERTY TO BE TRANSFERRED FROM THE DESIGNATED BENEFICIARIES TO A THIRD-PARTY NON-BENEFICIARY.**

{¶29} In assignment of error J, plaintiffs allege that the trial court erred by interpreting the trust documents to give Trustee Pittenger "the power to do anything she wished with the entrusted property." (Appellants' Brief at 19). In assignments of error B and C, plaintiffs allege that the trial court erred in stating the law governing constructive trusts and conversion, and that the trial court thereby improperly dismissed their claims for the same. In assignment of error F, plaintiffs allege that the trial court erred by dismissing their third-party claims against Cass.

{¶30} A constructive trust is a:

> **trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice.**

*Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 280-81, 2006-Ohio-2418, 847 N.E.2d 405, ¶18, citing *Ferguson v. Owens* (1984), 9 Ohio St.3d 223,

225, 459 N.E.2d 1293, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221. A constructive trust is considered a trust because "'[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'" *Cowling*, 2006-Ohio-2418, at ¶18, citing *Ferguson*, 9 Ohio St.3d at 225, quoting *Beatty v. Guggenheim Exploration Co.* (1919), 225 N.Y. 380, 386, 389, 122 N.E. 378.

{¶31} "A constructive trust is an equitable remedy that protects against unjust enrichment and is usually invoked when property has been obtained by fraud." *Cowling*, 2006-Ohio-2418, at ¶19, citing *Ferguson*, 9 Ohio St.3d at 226; *Aetna Life Ins. Co. v. Hussey* (1992), 63 Ohio St.3d 640, 642, 590 N.E.2d 724. "[A] constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." Id., citing *Ferguson*, 9 Ohio St.3d at 226, citing 53 Ohio Jurisprudence 2d (1962) 578-579, Trusts, Section 88; V Scott on Trusts (3d Ed.1967) 3412, Section 462. "In applying the theories of constructive trusts, courts also apply the well known equitable maxim, 'equity regards [as] done that which ought to be done.' " Id., quoting *Ferguson*, 9 Ohio St.3d at 226.

{¶32} Similarly, "conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his

possession under a claim inconsistent with his rights." *State ex rel. Toma v. Corrigan* (2001), 92 Ohio St.3d 589, 592, 752 N.E.2d 281, citing *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172. The elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *Dice v. White Family Cos., Inc.*, 173 Ohio App.3d 472, 2007-Ohio-5755, 878 N.E.2d 1105, ¶17, citations omitted.

{¶33} Finally, "[a] third person who has notice that the trustee is committing a breach of trust and participates therein is liable for any loss caused by such breach." 91 Ohio Jurisprudence 3d Trusts, Section 497, citing *Shuster v. North American Mortg. Loan Co.* (1942), 139 Ohio St. 315, 40 N.E.2d 130.

{¶34} The R.M. Trust agreement was made between Reid M. Pittenger, as Grantor and as Trustee, along with his wife, Doris H. Pittenger, as Co-Trustee. (R.M. Trust, Plaintiff's Ex. 1). Upon Reid's death, the trust estate was to be divided into two trusts: Trust Number 1 (Marital Trust) and Trust Number 2 (Child/Children's Trust). (R.M. Trust, Article II, Plaintiffs' Ex. 1). With regard to the Marital Trust, Doris, as trustee, was directed to "pay the net income of Trust Number 1 to or for the benefit of [Doris] annually, *or more frequently if [Doris] directs*." (R.M. Trust, Article II, Section 8(a), Plaintiff's Ex. 1) (emphasis added).

Article II, Section 8(b) provided that "[Trustee Doris] may pay to or for the benefit of [Doris] from time to time such amounts of the principal of Trust Number 1 as [Trustee Doris] *in [her] discretion* may determine to be necessary *or desirable* for the health, education, support, maintenance, *comfort, and happiness* of [Doris]." (Plaintiff's Ex. 1) (emphasis added).

{¶35} With regard to Trust Number 2, the trust agreement provided:

**(a)   [Trustee Doris] may in [her]** *sole discretion* **pay to or for the benefit of [Doris] and the Grantor's children and their issue so much of the net income principal of Trust Number 2 as is necessary for the health, education, support, and maintenance of [Doris] * * *** *The welfare of [Doris] is Grantor's primary concern, and [Trustee Doris] shall be liberal in making payments of income and principal to or for the benefit of [Doris].* **However, [Trustee Doris] shall not make payments of principal for Trust Number 2 to [Doris] until Trust Number 1 shall have been first exhausted or until further liquidation of Trust Number 1 assets would,** *in the sole discretion of [Trustee Doris],* **be inappropriate. [Trustee Doris] is directed to consult [Doris] prior to making any distribution of income or principal to any person other than [Doris]. However, [Trustee Doris] shall not be required to follow the recommendation of [Doris] concerning distribution of income or principal from Trust Number 2.**

**(b) Upon the death of [Doris], trustee shall transfer the principal of Trust Number 2 and all accumulations thereof by proper instruments of conveyance to and among the children of Grantor and their issue in such proportions and legal or equitable interest as [Doris] shall appoint by specific reference to this limited power of appointment in [Doris'] Last Will and Testament. The purpose of this power of appointment is to enable [Doris] to respond to changes in circumstance of Grantor's children and their issue which may occur subsequent to Grantor's death by adjusting the disposition of the assets of Trust Number 2 at [Doris'] death.**

(R.M. Trust, Article II, Section 9(a), Plaintiff's Ex. 1).

**{¶36}** Article III of the Trust provided that any of the principal of Trusts 1, 2, and 3, or all of the trust estate, should be held as a single fund for the benefit of Grantor's children and their issue divided into separate trusts under Article III. (Plaintiffs' Ex. 1).  Article V, Section 11 provided that the "[Trustee Doris] shall incur no liability for the reasonable and prudent exercise of or failure to exercise any and all duties, powers, and discretions enumerated in this agreement or conferred upon [Trustee Doris] by any provision of law." (Plaintiff's Ex. 1).

**{¶37}** The Reid M. Pittenger and Doris H. Pittenger Joint Revocable Trust ("Joint Trust") was entered into between Reid and Doris as Grantors and co-trustees. (Plaintiffs' Ex. 2).  During Reid and Doris' lives, the trustee (Doris or Reid) was required to pay to Doris and Reid or apply for their benefit "all of the net income of the trust, and such amounts or all of the principal as [they] may request in writing from time to time[.]" (Joint Trust, Section 3, Plaintiffs' Ex. 2). Upon the death of one of the grantor-spouses, the trust property was to be divided into two trusts: Trust A (the marital trust) and Trust B (the family trust). (Id. at Section 5, Plaintiffs' Ex. 2).  With regard to Trust A, the trustee (Doris since she survived Reid) was instructed to "pay to [Doris], on an annual basis and no less frequently than quarterly, all of the net income of trust A beginning as of the date of death of the first grantor-spouse's death." (Id. at Section 6(a)(i), Plaintiffs' Ex.

2).  Doris, as trustee, was also instructed to "pay to [Doris] so much, none, *or all* of the principal of Trust A as [Trustee Doris], *in [her] absolute discretion*, shall deem necessary *or advisable* to provide *liberally* for [Doris'] health, maintenance and support in reasonable comfort." (Id. at Section 6(a)(ii), Plaintiffs' Ex. 2) (emphasis added).  Trustee Doris was further instructed to "pay to [Doris], * * * an amount equal to the greater of Five Thousand Dollars ($5,000) or five percent (5%) of the value of the principal of Trust A on the last day of each calendar year as [Doris] may in writing request in each calendar year." (Id. at Section 6(a)(iii), Plaintiffs' Ex. 2).  Section 6(b) gave Doris the power to appoint the remaining portion of the principal of Trust A "to such one or more persons or organizations or [Doris'] estate, in such amounts, proportions, interests, or estates, and upon such trusts, terms, powers, and conditions, if any, *as [Doris], alone and in all events, may appoint* by [her] valid Will[.]" (Plaintiffs' Ex. 2) (emphasis added).

{¶38}  With respect to Trust B, the family trust, Trustee Doris was directed to:

> * * * **distribute or accumulate, *in [Trustee Doris'] sole discretion*, such portions of the income of this trust to, or for the *benefit of, [Doris]* and children, *in equal or unequal shares as [Trustee Doris] deems advisable* for their respective health, support, maintenance and education, giving due regard to the respective needs of each beneficiary, to the amount of income available to them from other sources * * * and to their respective federal income tax brackets.**

(Joint Trust, Section 7(a)(i), Plaintiffs' Ex. 2) (emphasis added). The Joint Trust further provided that:

> **[Trustee Doris] shall also pay to [Doris] and to each living child of ours *so much, none or all* of the principal of Trust B as [Trustee Doris], *in [her] absolute discretion*, shall deem necessary *or advisable* to provide liberally for the health, maintenance, support in reasonable comfort, and education *of [Doris]* and children, *bearing in mind that our primary concern is for the care and well-being of [Doris]*.**

(Id. at Section 7(a)(ii), Plaintiffs' Ex. 2) (emphasis added). The Joint Trust also provided that "[Trustee Doris] shall pay to [Doris], beginning with the calendar year following the year of the first spouse's death, an amount equal to *the greater of* Five Thousand Dollars ($5,000) or five percent (5%) of the value of the principal as [Doris] may in writing request in each calendar year[.]" (Id. at Section 7(a)(iii), Plaintiffs' Ex. 2) (emphasis added). Upon Doris' death, the successor trustee was directed to:

> **retain and distribute the remaining amount of principal of Trust B (as augmented by additions from Trust A, from [Doris' estate], or otherwise) in the following manner: (A). One-half of the net trust estate to Jane E. Miller and Louise E. Murray in equal shares per stirpes with the exception that if Jane E. Miller predecease us, or die [sic] prior to receiving her full distribution, then her share shall pass to Ann Louise Miller; (B) One-half of the net trust estate to Dolores H. Cass per stirpes.**

(Joint Trust, Section 7(b), Plaintiffs' Ex. 2). The Joint Trust provided the trustee with several "rights, powers, duties, and immunities to be exercised without court order or other authority *upon such terms and conditions and at such times as the*

*trustee determines in its absolute discretion*[.]" (Joint Trust, Section 10(a)-(t), Plaintiffs' Ex. 2) (emphasis added).

**{¶39}** After reviewing the trust agreements in their entirety, with special attention to the provisions highlighted above, we cannot conclude that the trial court erred in dismissing Plaintiffs' constructive trust, conversion, and third-party claims. As an initial matter, although generally a court is required to assume the allegations in the complaint are true for purposes of a Civ.R. 12(B)(6), a court is not required to assume those allegations in the complaint are true, which the plain language of an attached, incorporated document clearly refutes. *LeRoy*, 2007-Ohio-3608, at ¶14, citing *Maitland*, 2004-Ohio-5717, at ¶11; *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 532, 668 N.E.2d 889 (Moyer, C.J., dissenting), citing *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.* (1995), 72 Ohio St.3d 106, 109, 647 N.E.2d 799. See, also, *Keenan*, 2006-Ohio-3633, at ¶¶11-13 (noting that the plain language of the agreements at issue contradicted appellants' assertions and that the written agreement was an insuperable bar to recovery). In an effort to limit Trustee Doris' discretion under the terms of the trusts, the plaintiffs alleged that "[s]he was permitted to draw on the trust yields for "maintenance" and "reasonable comfort," and that Doris had no such needs over the seven-year period she was trustee. (First Amended Complaint, Doc. No. 10, at ¶¶4-5). That is only a partial truth. The R.M. Trust allowed

Trustee Doris to pay to herself, as the surviving spouse, income from the marital trust annually or more frequently if she directed. (R.M. Trust, Section 8(a), Plaintiffs' Ex. 1). Doris was also permitted to draw from the marital trust principal in her discretion, which was necessary or desirable for her health, education, support, maintenance, comfort, and happiness. (Id. at Section 8(b)). Doris was also given discretion to make payments of principal and income to herself from the children's trust after the assets of the marital trust were exhausted. (Id. at Section 9). Reid also expressly indicated that Doris was his "primary concern" and that she should be "liberal in making payments of income and principal to or for the benefit of [herself]." (Id.). Furthermore, the joint trust expressly defined the term "maintenance" to account for Doris' previous manner of living. (Joint Trust, Section 9(d), Plaintiffs' Ex. 2). Both definitions of "health" and "support" also include the terms "but shall not be limited to," indicating the grantor's intent to provide the trustee with discretion in administering the trust funds. (Id. at Sections 9(c), (e), Plaintiffs' Ex. 2).

{¶40} The thrust of Plaintiffs' complaint is that Doris never divided the trust assets into marital and family trusts as mandated by the trusts, and that Doris, as trustee, wrongfully caused funds to be withdrawn from the trusts for the direct and indirect benefit of her daughter, Dolores Cass. These allegations, even if true, fail as a matter of law under the express terms of the trust agreements. Under the

terms of the the R.M. Trust, Trustee Doris was not required to physically segregate the trust assets but could "hold them as an undivided fund for management and investment purposes." (R.M. Trust, Article II, Section 2, Plaintiffs' Ex. 1). Under the terms of the trusts, Doris was permitted to withdraw money from the trusts for herself liberally, and the provisions read collectively evidence the grantor's intent for the same. That Doris placed the funds into accounts for which Cass was the primary beneficiary is irrelevant. Furthermore, the joint trust agreement allowed Doris, in her *sole* or *absolute* discretion, to give her daughter Cass family trust funds for her health, education, support, maintenance, and education. (Joint Trust, Sections (7)(a)(i), (ii), Plaintiffs' Ex. 2). The joint trust also provided that the disbursements from the family trust income could be in unequal shares at Doris' sole discretion, and that Doris could pay "so much, none, or all of the principal" of the family trust as Doris deemed necessary *or advisable* in her *absolute* discretion. (Id.). Under these circumstances, even if the allegations of plaintiffs' complaint are assumed to be true, as required, the trust agreements are an insuperable bar to their recovery as Doris had the discretion to remove the trust funds liberally for her benefit and in unequal shares to the children.

{¶41} Since Doris' actions, as alleged in the complaint, were not in violation of the trust agreements, Plaintiffs' fail to allege any commission of wrong, unconscionable conduct, artifice, concealment, or questionable means, or

any act against equity and good conscience by which a court could impose a constructive trust upon defendant Cass. *Estate of Cowling*, 2006-Ohio-2418, at ¶18, citing *Ferguson*, 9 Ohio St.3d at 225, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221. Similarly, plaintiffs have failed to allege any "wrongful act or disposition of plaintiff's property rights" for which an action for conversion may be maintained. *Dice*, 2007-Ohio-5755, at ¶17, citations omitted. Furthermore, since Doris has not committed any breach of the trust agreements, even assuming the allegations of the complaint to be true, plaintiffs have failed to allege a breach for which Cass, as a third party, might be liable. 91 Ohio Jurisprudence 3d Trusts, Section 497, citing *Shuster*, 139 Ohio St. 315.

{¶42} For these reasons, plaintiffs' assignments of error J, B, C, and F are hereby overruled.

## ASSIGNMENT OF ERROR I

**THE COURT ERRED IN IGNORING PLAINTIFFS' COMPLAINT FOR BREACH OF FIDUCIARY DUTY, SELF-DEALING, CONFLICT OF INTEREST AND BREACH OF STATUTORY DUTIES OF A TRUSTEE IN DISMISSING PLAINTIFFS' COMPLAINT ON A RULE 12(B)(6) MOTION.**

## ASSIGNMENT OF ERROR K

**THE COURT ERRED IN DISMISSING PLAINTIFFS' COMPLAINT UNDER A RULE 12(B)(6) MOTION WHICH ALLEGED THAT THE TRUSTEE IGNORED THE SETTLOR'S WISHES IN HANDLING TRUST PROPERTY.**

{¶43} In assignment of error I, plaintiffs allege that the trial court erred by dismissing their complaint for breach of fiduciary duty, self-dealing, conflict of interest, and breach of statutory duties. In assignment of error K, plaintiffs allege that the trial court erred in dismissing their complaint because the trustee ignored the settlor's wishes in handling the trust property. We disagree.

{¶44} As an initial matter, the Plaintiffs never asserted breaches of statutory duties in their initial or amended complaint *or* their multiple filings in response to the motion to dismiss. (Doc. Nos. 1, 8, 10, 14, 18). In fact, plaintiffs never cited any of the statutes in their multiple filings in the trial court that they now argue on appeal. It was not until *after* the trial court granted the motion to dismiss that plaintiffs asserted any breach of statutory duties. (Memo. in Support of Motion for Reconsideration, Doc. No. 28). "A party waives any error that he could have, but did not, call to the trial court's attention *at a time when such error could have been avoided or corrected by the trial court.*" *Cichanowicz v. Cichanowicz*, 3d Dist. No. 3-08-04, 2008-Ohio-4779, ¶26, quoting *Butler v. Butler*, 4th Dist. No. 02CA2833, 2002-Ohio-5877, ¶19, citing *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629; *Van Camp v. Riley* (1984), 16 Ohio App.3d 457, 463, 476 N.E.2d 1078. The Rules of Civil Procedure do not provide for motions for reconsideration; and therefore, "motions for reconsideration of a final judgment in the trial court are a nullity." *Pitts v. Dept. of*

*Transp.* (1981), 67 Ohio St.2d 378, 379-80, 423 N.E.2d 1105; *Ham v. Ham*, 3d Dist. No. 16-07-04, 2008-Ohio-828, ¶15. Furthermore, any order that a trial court enters granting or denying any such motion is also a legal nullity. *Robinson v. Robinson*, 168 Ohio App.3d 476, 2006-Ohio-4282, 860 N.E.2d 1027, ¶17, citing *Pitts*, 67 Ohio St.2d 378. As such, by raising the alleged breaches of statutory duties in their motion for reconsideration plaintiffs did not preserve the issue for appeal since the trial court could not have corrected its error(s) via a motion for reconsideration. *Franks v. The Lima News* (1996), 109 Ohio App.3d 408, 411, 672 N.E.2d 245. See, also, *Wilson v. PNC Bank, NA* (May 5, 2000), 1st Dist. No. C-990727, at *3 (motion to reconsider *did* preserve issue where the motion to reconsider was filed *before* the trial court's final judgment so the trial court could have considered the ordinance); *Stanley v. City of Miamisburg* (Jan. 28, 2000), 2nd Dist. No. 17912, at *4; *Reagan v. Ranger Transp., Inc.* (Aug. 9, 1996), 11th Dist. Nos. 95-P-0123, 95-P-0124, at *3 (Civ.R. 60(B), not a motion for reconsideration, is the proper way to bring to the trial court's attention its errors following a final judgment entry).

{¶45} Even assuming plaintiffs' alleged breaches of statutory duties were preserved for appeal, we find their arguments meritless. Plaintiffs cite the following portions of three statutes in support of these assignments of error: R.C. 5808.01, which provides, in pertinent part, "* * * the trustee shall administer the

trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries[.]"; R.C. 5808.02, which provides, in pertinent part:

> **(A)  A trustee shall administer the trust solely in the interests of the beneficiaries.**
>
> **(B)  * * * a sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or that is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless one of the following applies:**
>
> **\* \* \***
> **(C) A sale, encumbrance, or other transaction involving the investment or management of trust property is presumed to be affected by a conflict between personal and fiduciary interests if it is entered into by the trustee with one of the following:**
>
> **\* \* \***
> **(2) The trustee's descendant, sibling, or parent or the spouse of a trustee's descendant, sibling, or parent;**

and R.C. 5808.03, which provides, in pertinent part, "[i]f a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, *giving due regard to the beneficiaries' respective interests.*"  (Emphasis added).

{¶46} When reviewing these statutes, it is important to note that Doris was both a trustee and the *primary* beneficiary under the trust agreements.  The grantor expressly stated in the R.M. Trust that Doris' welfare was his "primary concern" and that Doris, as trustee, "shall be liberal in making payments of income and

principal to or for [her] benefit." (R.M. Trust, Article II, Section 9(a), Plaintiffs' Ex. 1). Both trusts provided that any of trust assets remaining after Doris' death would be distributed into separate trusts for the children. (Id., at Article III); (Joint Trust, Section 7(b), Plaintiffs' Ex. 2). Therefore, the children's interest in the trust assets was contingent upon whether or not Doris, as the surviving spouse, used all of the trust funds prior to her death, which she had the right to do under the terms of the trust agreements. See *Firestone v. Galbreath* (1993), 67 Ohio St.3d 87, 89, 616 N.E.2d 202 (Evans, J., concurring in part dissenting in part). After reading the terms of the trust agreements and the broad discretion afforded to Doris as trustee, along with the settlor's express statement that Doris was his "primary concern," we cannot conclude that she breached any duty, statutory or otherwise, owed to the plaintiffs; rather, Doris, as trustee, gave due regard to their respective interests *as contingent beneficiaries*. R.C. 5808.03. Furthermore, we find R.C. 5808.02 inapplicable here as that section deals with trustee's self-dealing where the trustee is not also a beneficiary under the terms of the trust like Doris is here. Furthermore, even assuming the statute applies, R.C. 5808.02(B)(1) provides an exception where "[t]he transaction was authorized by the terms of the trust * * *," which would preclude plaintiffs from prevailing on the allegations of so-called self-dealing against Doris.

**{¶47}** For all these reasons, plaintiffs' assignments of error I and K lack merit and are hereby overruled.

**ASSIGNMENT OF ERROR D**

**THE COURT ERRED IN DISMISSING PLAINTIFFS' REQUEST FOR AN ACCOUNTING.**

**ASSIGNMENT OF ERROR E**

**THE COURT ERRED IN DISMISSING PLAINTIFFS' COMPLAINT REQUESTING RECORDS PERTAINING TO THE HANDLING OF THE TRUST.**

**{¶48}** In assignments of error D, plaintiffs argue that the trial court erred in dismissing their complaint because they were entitled to an accounting pursuant to the terms of the joint trust agreement and R.C. 5808.13. In assignment of error E, plaintiffs assert that the trial court erred in dismissing its complaint, which alleged spoliation of records, and the trustee's failure to keep adequate records. We disagree.

**{¶49}** As an initial matter, plaintiffs failed to assert any breach of statutory duties in their multiple filing with the trial court prior to its entry of final judgment. (Doc. Nos. 1, 8, 10, 14, 18). It was not until *after* the trial court granted the motion to dismiss that plaintiffs asserted any breach of statutory duties. (Memo. in Support of Motion for Reconsideration, Doc. No. 28). As such, plaintiffs have waived their arguments with respect to the trustee's purported breach of its statutory duties. *Cichanowicz* at ¶26, quoting *Butler* at ¶19, citing

*Stores Realty Co.*, 41 Ohio St.2d at 43; *Riley*, 16 Ohio App.3d at 463; *Pitts*, 67 Ohio St.2d at 379-80; *Ham* at ¶15; *Robinson* at ¶17, citing *Pitts*, 67 Ohio St.2d 378; *The Lima News*, 109 Ohio App.3d at 411. See, also, *PNC Bank*, 1st Dist. No. C-990727, at *3; *Stanley*, 2nd Dist. No. 17912, at *4; *Reagan*, 11th Dist. Nos. 95-P-0123, 95-P-0124, at *3.

{¶50} Furthermore, plaintiffs' complaint did not allege a breach of the trustee's duty *to provide* an accounting to them, as beneficiaries, as they now allege on appeal. At best, the complaint alleges that "[d]efendants had a duty *to keep* an accurate accounting of all assets," not a duty *to provide* plaintiffs with an accounting as they now argue. (First Amended Complaint, Doc. No. 10, at ¶12). Plaintiffs sought an accounting as a form of equitable relief to account for the trust assets in the prayer of their complaint. (Id., at Prayer for Relief). Plaintiffs did not assert a separate breach of duty for the trustee's alleged failure to provide them with an accounting as they now assert on appeal. (See id.). Therefore, plaintiffs' assignment of error D lacks merit.

{¶51} Next plaintiffs allege the trial court erred in dismissing their complaint for spoliation of records. The elements of spoliation are: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the

plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.* (1993), 67 Ohio St.3d 28, 29, 615 N.E.2d 1037. Plaintiffs failed to allege any facts which would state a cause of action for spoliation. Plaintiffs alleged that Doris and Cass "intentionally failed to maintain records as to the opening balances of each trust," not that they willfully destroyed records in anticipation of litigation to disrupt plaintiffs' case against them. (Amended complaint, Doc. No. 10, at ¶12). As such, the trial court did not err in dismissing plaintiffs' complaint on this basis.

{¶52} Plaintiffs' assignments of error D and E are, therefore, overruled.

{¶53} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**