**GREGORY, Appellee,**

v.

**GREGORY, Appellant.**

[Cite as *Gregory v. Gregory*, 172 Ohio App.3d 822, 2007-Ohio-4098.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22011.

Decided Aug. 10, 2007.

L. Anthony Lush, for appellee.

Michael T. Columbus and Brian A. Sommers, for appellant.

WOLFF, Presiding Judge.

{¶ 1} Steven Gregory appeals from a final judgment and decree of divorce entered by the Montgomery County Court of Common Pleas, Domestic Relations Division.

{¶ 2} Steven and Nancy Gregory were married in August 1985, and two children were born of the marriage. Nancy was the primary wage earner during the marriage, and Steven maintained steady employment as an electrician at the Mound. In early 2003, when the Mound was downsizing, the Gregorys agreed that Steven should accept a severance package and return to school. Thereafter, the marriage appears to have deteriorated, and Steven did not promptly begin school or find other employment. He did begin school at Sinclair Community College after a few months, but he admittedly made a "poor showing."

{¶ 3} On September 30, 2004, Nancy filed a complaint for divorce. She also sought a restraining order restricting Steven's disposal of property, among other things. On October 14, 2004, the trial court granted the restraining order.

{¶ 4} The trial court conducted a hearing on January 24, 2006, at which each party testified on his or her own behalf. The court entered its final judgment and decree of divorce and a final decree of shared parenting on January 5, 2007. It used October 14, 2004, as the date on which the marriage had ended. The parties' assets were divided, and Nancy was named the residential parent of the parties' children.

■ {¶ 5} Steven appeals from several aspects of the trial court's judgment, raising ten assignments of error. In reviewing these assignments of error, we recognize that the trial court exercises broad discretion in dividing marital assets and in setting child and spousal support. *Neville v. Neville,* 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5; *Moore v. Moore,* 166 Ohio App.3d 429, 2006-Ohio-1431, 850 N.E.2d 1265, ¶ 7, 16.

{¶ 6} I. "The trial court abused its discretion by imputing income to appellant when determining his child support obligations."

■ {¶ 7} Steven argues that the factors set forth at R.C. 3119.01(C)(11)(a) did not support the trial court's decision to impute income to him in its child-support calculations. Nancy contends that the court did not abuse its discretion in concluding that Steven had been voluntarily underemployed.

{¶ 8} The parties agree that Steven left his employment at the Mound in 2003 by their mutual agreement when he was offered a severance package and his future job security was in question. It is undisputed that Steven earned $42,000—the amount of income imputed to him—at the Mound. The parties' understanding when Steven left his employment was that he would return to school. Nancy apparently believed that Steven would maintain a full-time class load in pursuit of a degree and would work part-time during school. Steven did neither. He admittedly made a "poor showing" in his grades and completion of classes and did not seek full- or part-time employment. Even after the parties' separation, it is unclear whether Steven sought employment. He testified that he had taken out personal loans and borrowed from friends and family to pay his expenses because he wanted to pursue his education instead of employment. Steven also claimed that he suffered a "psychotic episode" and extreme stress related to the deterioration of the marriage that caused him to delay his enrollment in school and prevented him from finding meaningful employment.

{¶ 9} Steven claims that the trial court abused its discretion in imputing income to him because he had quit his job by agreement of the parties, had helped to take care of the children, and had provided for the family through unemployment benefits. He contends that his knowledge of electronics was "rudimentary," that he needed more training, and that Nancy had an educational advantage.

{¶ 10} R.C. 3119.01(C)(11) sets forth the factors to be considered in imputing income. Those factors include what the parent would have earned if fully employed, prior employment experience, education, physical, and mental disabilities, if any, and availability of employment in the area.

{¶ 11} In our view, the trial court did not abuse its discretion in imputing income or in calculating its amount. Steven earned $42,000 in 2003 at the Mound. Since leaving the Mound, he had returned to school and had nearly completed his

second associate degree, as the parties had planned and in anticipation of earning more income. The court concluded that the parties' agreement that Steven would pursue his education in lieu of working "was no longer viable or reasonable once the marriage began to break down." Moreover, the court concluded that Steven "neither matriculated nor worked," even after Nancy had asked him to return to work at least part-time. In the court's view, Steven provided no evidence that he could not work full time and complete his classes part time. Based on Steven's previous earning capacity and his recent education, the trial court could have reasonably imputed income at the same level as his previous employment.

{¶ 12} The first assignment of error is overruled.

{¶ 13} II. "The trial court abused its discretion by ordering appellant to pay one-half of the minor children's parochial school tuition or alternatively by failing to apply tuition expenses and health care costs as credits to appellant's child support obligation."

{¶ 14} Steven claims that the trial court erred in ordering him to pay one-half of the tuition for his children's parochial school or, in the alternative, in failing to give him a credit against his child-support obligations for monies spent on tuition and health care.

{¶ 15} The parties had agreed during their marriage to send their children to parochial school, and at the time of the divorce, the older child was in the seventh grade. The court reasonably concluded that the children should not be required to change schools in the midst of the divorce and that the older child should be permitted to finish elementary school at his current school. Thus, the court ordered that the children remain in Catholic school for two years, with the parties splitting the cost equally. The trial court did not abuse its discretion in ordering Steven to pay half of the children's tuition.

{¶ 16} To effectuate the shared tuition costs, the trial court reimbursed Nancy for half of the tuition that she had already paid during the parties' separation by awarding her the parties' entire 2004 state and federal tax returns. The refunds totaled $7,798. Additionally, Nancy was ordered to pay for the children's tuition for the school year ending in 2006. She also benefitted from the proceeds of a school raffle in which she won a $2,100 tuition credit.

{¶ 17} The evidence showed that the grade school tuition was $3,900 per year for the two children, which was reduced by Nancy's raffle winnings for the 2005–2006 school year. Thus, Steven contends that it was unreasonable for the court to award Nancy almost $10,000 to offset her payment of the tuition.

{¶ 18} We cannot address this contention on the record before us. We cannot determine whether the court awarded Nancy too large an amount to cover

Steven's portion of the tuition or whether it intended for the amount to cover Steven's portion of the tuition for more than one year. It is unclear who paid the children's tuition for the 2004–2005 school year. Moreover, the court ordered that the children would continue in Catholic school for the 2006–2007 and 2007–2008 school years, which would include one year at Alter High School for the older child, and no evidence was presented as to the tuition at Alter. Thus, we cannot determine whether Steven's total tuition obligation under the decree—which will be paid with the tax refund and tuition credit—is comparable to half of the amount of the tax refunds and tuition credit. We will remand to the trial court for clarification of this part of the order.

{¶ 19} The second assignment of error is sustained.

{¶ 20} III. "The trial court abused its discretion in calculating appellant's spousal support award."

{¶ 21} Steven contends that the trial court's award of spousal support was inadequate and did not sufficiently consider the statutory factors set forth at R.C. 3105.18(C)(1). He claims that the length of the marriage, the parties' disparate incomes, and his lack of earnings for the preceding four years justified a greater award.

{¶ 22} The trial court awarded spousal support to Steven for five years in the amount of $650 per month. This calculation assumed annual income for Steven and Nancy of $42,000 and $95,000, respectively. The court found that the parties had had an above-average standard of living during the marriage. The court found that Steven's monthly expenses were reasonable and that they amounted to $1,421 per month. The court also noted that Steven had received additional education in recent years and that he could continue to pursue a degree in electrical engineering while working full time. The court retained jurisdiction over the amount of spousal support.

{¶ 23} In our view, the spousal support award was reasonable. Steven earned $42,000 without the benefit of his additional education. By the time of the decree, he had obtained additional education with the goal of increasing his income, and if he chooses to do so, he will acquire several more years of education before the spousal support ends. Moreover, Steven's lack of employment for the preceding years was attributable to his own choices. Under these circumstances, the trial court's award of spousal support was reasonable.

{¶ 24} The third assignment of error is overruled.

{¶ 25} IV. "The trial court abused its discretion when allocating marital assets and debt."

{¶ 26} Steven contends that the trial court distributed the parties' marital property inequitably. He discusses several alleged disparities in the distribution of assets, which we will address in turn.

{¶ 27} Steven's first complaint about the division of marital assets relates to the marital home. In its July 18, 2006 order, the court did not allow Steven to receive credit for equity accrued due to principal payments made by Nancy while the divorce was pending. Steven claims that this was unfair to him, although it is undisputed that he did not contribute to the payments made while the parties were separated. He asserts that the court "cut off [his] ability to build equity in the marital property, and ordered him to pay [Nancy] for that lost equity." In essence, he objects to the court's manner of calculating the amount of equity to which he was entitled. The trial court found that use of the date of separation as the date of the end of the marriage was equitable "given the behavior of [Steven], the delays occasioned by his actions, his failure to cooperate in discovery and failure to work and failure to pay child support."

{¶ 28} We cannot conclude that the trial court abused its discretion in using the date of the parties' separation as the date of the end of the marriage for the purpose of dividing assets. The court obviously believed that Steven had made the entire process more difficult and drawn out than it needed to be. Under these circumstances, it was entirely reasonable for the court to deny Steven any benefit of the delay, such as the equity that had accrued on the marital home while the proceedings were pending.

{¶ 29} Steven also objects to the trial court's order that he pay the cost of dividing his deferred compensation plan and the cost of "non-market variation deductions or withdrawals" against his retirement accounts. Although Steven complains of unfairness, he does not explain the asserted unfairness. It appears that Nancy was ordered to pay the cost of preparing documents for the division of her retirement benefits. Thus, as it relates to the cost of dividing retirement benefits, this order did not result in any unfairness to Steven. The court's order with respect to "non-market variation deductions or withdrawals" being charged against Steven is claimed to be unfair because of a lack of similar treatment as to Nancy's accounts. Steven points to nothing in the record and provides no insight as to how this was unfair. Accordingly, this provision does not appear to provide any undue benefit to Nancy.

{¶ 30} Steven asserts that the court acted unreasonably in ordering him to pay more than half of two credit-card balances. Based on our review of the trial court's calculations, we disagree with his premise that he was ordered to more than half of the credit-card debt. In fact, it appears that he was ordered to pay substantially less than half.

{¶ 31} The couple had two credit cards with outstanding balances at the end of their marriage: a Shell card and a VISA card. Nancy testified that the Shell card had an outstanding balance of $2,340.52 when the parties separated and that she had paid $474 on this card while the divorce was pending. The court ordered Steven to pay $1,644.50 through a deduction from his equity in the home. This amount presumably represented approximately half of the balance, $1,170.26, plus the $474 that Nancy paid on the account before the divorce was finalized. Thus, with respect to the Shell account, Steven was ordered to pay more than half because he was ordered to reimburse Nancy for the total amount—rather than half—of the payments she had made. However, when the trial court's disposition of the VISA card in taken into account, Steven came out ahead. Nancy testified that the balance on the VISA card when the parties separated was $2,391.73 and that she had paid $1,289.98 while the divorce was pending. With respect to this card, the court ordered Steven to pay $1,289.98. This appears to have been an error because the court ordered Steven to reimburse Nancy for all of the payments she had made while the divorce was pending but not for his share of the outstanding balance. If the court had ordered Steven to pay half of the principal and half of the payments, he would have been required to pay $1,840.86, rather than $1,289.98. Thus, any error by the trial court with respect to the credit cards did not prejudice Steven.

{¶ 32} Next, Steven claims that he should have received interest on the proceeds from the sale of the parties' vacant lot on West Lion Five Point Road, which were held in trust by Nancy's attorney by agreement of the parties while the divorce proceedings unfolded. The record established that a substantial portion of the proceeds was paid to Steven's various attorneys while the case was still pending. Moreover, he agreed to have the funds held in trust when the lot was sold, and he does not appear to have requested the payment of interest on those funds at the time of the agreement. Under these circumstances, we find no error in the trial court's failure to award Steven interest on these funds.

{¶ 33} Steven also argues that the court abused its discretion in ordering him to pay all of the expenses incurred in selling the parties' time-share. Steven misreads the trial court's order. The trial court stated that Nancy should dispose of the time-share as prudently as possible. The court ordered that Nancy's costs in maintaining the property from 2004 through its sale and any costs associated with the sale should be reimbursed from the sale proceeds and that the remaining net proceeds should be divided equally between the parties. Insofar as the costs were paid from the proceeds of the sale, the parties shared these expenses equally. There was no abuse of discretion.

{¶ 34} Finally, Steven disputes the valuation of the parties' vehicles. He claims that his Tahoe was overvalued and that Nancy's Impala was undervalued.

He also claims that the trial court erred in ordering the sale of a 1985 Chevrolet Camaro without assigning a specific value to that vehicle and in awarding an old Lumina, valued at $500, to Nancy without any offsetting benefit to him.

{¶ 35} Nancy presented evidence about the values of the parties' vehicles, and the trial court adopted these values. Steven did not present any evidence regarding the values of the Tahoe, Impala, or Lumina. He testified only about the 1985 Camaro, and he agreed with Nancy's proposed valuation and sale of that vehicle. Based on the record before us, we cannot conclude that the trial court abused its discretion in valuing the parties' vehicles. Moreover, considering that a greater value was assigned to Steven's Tahoe than to Nancy's Impala, we cannot say that the trial court erred in awarding the Lumina to Nancy without identifying an offsetting benefit to Steven.

{¶ 36} The fourth assignment of error is overruled.

{¶ 37} V. "The trial court abused its discretion in determining the fair market value of the marital residence."

{¶ 38} The trial court determined that the fair market value of the family home at 4832 James Hill Road in Kettering was $200,000. This was the value assigned to the home by Denver Williams, upon whom the parties had agreed as the appraiser. Steven disputed this valuation because the house was valued at $229,200 for tax purposes, because Williams had allegedly failed to consider a house directly across the street that had sold for $240,000 several months earlier, and because Williams had allegedly included in his analysis of comparable properties a house that was sold in an estate sale.

{¶ 39} The trial court acted reasonably in accepting the appraiser's valuation of the house. Nancy testified that the house across the street was not comparable to the Gregory house because of a significant addition to the back of that house. Moreover, the court was not required to accept the county's valuation for real estate tax purposes. The court apparently found the appraiser's valuation to be the most thorough and credible assessment of the house's value. The court did not abuse its discretion in reaching this conclusion.

{¶ 40} The fifth assignment of error is overruled.

{¶ 41} VI. "The trial court abused its discretion in requiring appellant to pay appellee's attorney fees."

{¶ 42} Steven contends that the trial court erred in ordering him to pay Nancy's attorney fees because no rational basis existed for doing so. Although he acknowledges the trial court's conclusion that he caused much unnecessary delay and expense, he claims that the record does not support this finding.

{¶ 43} With respect to attorney fees, the Final Judgment and Decree of Divorce states:

{¶ 44} "Pursuant to this court's order of December 22, 2005, the Defendant shall pay all legal fees incurred by Plaintiff, including any advancement and court costs effective December 22, 2005. In addition, Defendant was ordered to pay his own legal expenses as incurred in this case as well. All attorney fees for the Plaintiff prior to and through December 21, 2005 shall be her sole responsibility, including all court costs and advancements or expenses which she incurred otherwise during that time."

{¶ 45} It appears that the trial court ordered Steven to pay attorney fees and court costs accruing after December 22, 2005, out of frustration with his delay tactics and contemptuous behavior. However, the prior judgment to which the court refers is a bit more cryptic than its description in the final decree would indicate. On December 23, 2005, the court filed an entry referencing a hearing on December 22, in which it continued the case until January 24, 2006. The continuance was apparently due to Steven's failure to provide discovery. The court ordered Steven to provide discovery within 14 days and stated: "The Defendant shall be responsible for all attorney fees, court costs and expenses for both [him] and the Plaintiff because of this delay." The language in the final decree is much more broad. It seems to make Steven responsible for all of Nancy's attorney fees after December 22, 2005, not just those necessitated by the delay, failure to provide discovery, and other contemptuous behavior.

{¶ 46} Although we are unimpressed with Steven's argument that his misconduct was unsubstantiated and that an award of attorney fees was unwarranted, we conclude that the trial court must clarify the extent to which it awarded fees and its reasons for doing so. The final decree purports to grant attorney fees much more expansively than the December 23, 2005, entry did, although the final decree relies on that previous entry for its justification. It appears that the award of fees should be tailored to include only that work attributable to Steven's lack of cooperation and should not include all of Nancy's attorney fees beyond a particular date, including, for example, her representation at the final hearing. Thus, while we recognize that the trial court has broad discretion in this matter, we remand for clarification of its actions and its reasoning.

{¶ 47} The sixth assignment of error is sustained in part and overruled in part.

{¶ 48} VII. "The trial court erred when it failed to include required language into the final decree of shared parenting."

{¶ 49} Steven claims that the court erred in failing to include language related to relocating the children in its final decree, as required by Montgomery County Loc.R. 4.24(G). Nancy asserts that this language is contained in the decree

through the incorporated standard order of parenting time. Nancy is correct. The language to which Steven refers is in the standard order of parenting time at paragraph 18, which is incorporated into the shared-parenting plan.

{¶ 50} The seventh assignment of error is overruled.

{¶ 51} VIII. "The trial court abused its discretion by requiring appellant to provide all transportation related to parenting time."

{¶ 52} Stephen claims that as "the disadvantaged party," the trial court should not have burdened him with all of the transportation responsibilities related to parenting time.

{¶ 53} The trial court did not explain its allocation of transportation responsibilities. Nancy points out, however, that the standard order of parenting time allocates responsibility for transportation to the nonresidential parent. In our view, there is nothing inherently unfair about this allocation. Steven did not demonstrate that transportation was an undue burden for him or that the parties live far apart. Under these circumstances, we cannot conclude that the trial court abused its discretion in ordering Steven to provide all transportation.

{¶ 54} The eighth assignment of error is overruled.

{¶ 55} IX. "The trial court abused its discretion in awarding appellee the amount of her spousal support arrearage as an off-set against appellee's property settlement."

{¶ 56} Under this assignment of error, Steven asserts that the trial court abused its discretion in its handling of Nancy's arrearage in spousal support. The court recognized a $3,462 arrearage in temporary support, and it ordered that "[t]hese funds shall be offset in the exchange of assets ordered herein * * * or to fund [Steven's] attorney fees obligations."

{¶ 57} Steven claims that there is no "rational reason" for this provision, but he fails to make a cogent argument as to how he was prejudiced by this handling of the arrearage. We find no abuse of discretion.

{¶ 58} The ninth assignment of error is overruled.

{¶ 59} X. "The trial court abused its discretion by making clearly erroneous findings of fact in the final decree of shared parenting and shared parenting plan and the shared parenting plan's language created ambiguity and must be corrected."

{¶ 60} Steven objects to the language of the final decree, which indicates that he agreed to a shared-parenting arrangement while acknowledging that the court essentially granted custody of the children to Nancy. He claims that he did not agree to the terms of the plan and that the conflicting language creates

ambiguity. He asserts that the trial court should be ordered to more clearly express its intention to grant shared parenting.

{¶ 61} In the transcript, Nancy's attorney recited what he claimed to be the parties' agreement as to the children: that Nancy would have custody, serving as the residential parent and legal guardian, and that Steven would be the nonresidential parent. Further, Nancy's attorney indicated that they would be labeling the arrangement as shared parenting although, for all intents and purposes, it gave custody to Nancy. Steven's attorney acknowledged that this was an accurate statement of the parties' agreement. Steven did not present any evidence related to the custody of the children. Steven subsequently refused to sign the shared-parenting plan and other documents.

{¶ 62} Based on the testimony at the hearing, the trial court's characterization of the parties' agreement was accurate. The language of the parties' agreement was somewhat contradictory, mixing custodial and shared-parenting language, but the trial court could have reasonably concluded that the content of the agreement was clear. The shared parenting plan reflects that agreement. Moreover, the trial court found that Steven was largely responsible "for * * * the tortured procedural history of this case," causing unnecessary delay and expense, failing to provide discovery and to pay child support, and "adopt[ing] a bunker mentality" at times. Under these circumstances, we conclude that Steven's refusal to sign the shared parenting plan was not probative of whether the plan reflected the parties' agreement.

{¶ 63} The tenth assignment of error is overruled.

{¶ 64} As it relates to tuition and Nancy's attorney fees, the judgment is reversed, and the cause is remanded for further proceedings as described herein. In all other respects, the judgment of the trial court is affirmed.

Judgment affirmed in part
and reversed in part,
and cause remanded.

BROGAN and GRADY, JJ., concur.