**[Cite as *Ketchum v. Coleman*, 2014-Ohio-858.]**

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

KIMBERLY RAE KETCHUM                    :

     Plaintiff-Appellant              :          C.A. CASE NO.    2013 CA 28

v.                                      :          T.C. NO.    09DR252

BARRY L. COLEMAN                        :          (Civil appeal from Common
                                       Pleas    Court,    Domestic
Relations)
     Defendant-Appellee               :

                                                                                :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    7th    day of      March     , 2014.

. . . . . . . . . .

ERIK R. BLAINE, Atty. Reg. No. 0080726, 812 E. National Road, Vandalia, Ohio 45377

and

SASHA ALEXA M. VANDEGRIFT, Atty. Reg. No. 0080800, 33 W. First Street, Suite 200, Dayton, Ohio 45402
       Attorneys for Plaintiff-Appellant

JENNIFER J. WALTERS, Atty. Reg. No. 0066610, 80 S. Plum Street, Troy, Ohio 45373
       Attorney for Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Plaintiff-appellant Kimberly Rae Ketcham appeals a judgment of the Miami County Court of Common Pleas, Domestic Relations Division, overruling her objections and adopting the decision of the magistrate granting defendant-appellee Barry L. Coleman's motion to terminate the parties' shared parenting plan and motion for reallocation of parental rights and responsibilities. On August 19, 2013, Kimberly filed a timely notice of appeal with this Court.

{¶ 2} Barry and Kimberly were married on June 9, 1984, in Akron, Ohio. The parties produced eleven children as a result of the marriage, eight of whom were minors at the time the parties separated, to wit: L.C., born February 9, 1988; R.C., born March 21, 1989; K.C., born September 28, 1990; A.C., born December 9, 1991; K.C., born April 16, 1995; G.C., born September 20, 1996; S.C., born July 16, 1999; A.C., born August 2, 2000; C.C., born October 29, 2001; G.C., born December 2, 2002; and A.C., born September 9, 2004. On September 22, 2010, a Final Judgment and Decree of Divorce was filed, thereby terminating the parties' marriage. Initially, the parties entered into a shared parenting plan for all of the minor children. Both Barry and Kimberly were designated as residential parents for school attendance purposes.

{¶ 3} On May 10, 2012, Barry filed a motion to terminate the parties' shared parenting plan and a motion for reallocation of parental rights and responsibilities. A hearing was held before the magistrate on September 26 and 27, 2012, regarding Barry's various motions. On October 19, 2012, the magistrate issued a decision terminating the parties' shared parenting agreement and granting Barry's motion to be designated residential parent and legal custodian of the parties' minor children. On November 1, 2012, Kimberly filed two objections, to wit: 1) the magistrate erred when he imputed income to her for

support purposes and ordered her to pay child support; and 2) the magistrate erred when he terminated the shared parenting plan and designated Barry as the residential parent and legal custodian of the parties' minor children. The judgment and entry overruling Kimberly's objections and adopting the decision of the magistrate was issued by the trial court on July 24, 2013.

{¶ 4} It is from this judgment that Kimberly now appeals.

{¶ 5} Kimberly's sole assignment of error is as follows:

{¶ 6} "THE TRIAL COURT ERRED BY ADOPTING THE MAGISTRATE'S DECISION IMPUTING INCOME TO MS. KETCHAM FOR THE PURPOSES OF CALCULATING CHILD SUPPORT."

{¶ 7} In her sole assignment, Kimberly contends that the trial court erred when it found that she was voluntarily unemployed and imputed income to her for the purpose of calculating her child support obligation. Specifically, Kimberly argues that Barry presented no evidence on any of the statutory factors for imputing income and therefore did not meet his evidentiary burden. Kimberly further asserts that the only evidence related to her decision to voluntarily quit her job establishes that she did so because of "unfair working conditions." Most importantly, Kimberly argues that the evidence adduced at the hearing established that she voluntarily left her employment to return to school to study forensic psychology in order to "create more opportunities for herself and therefore, her children."

{¶ 8} "[T]he question whether a parent is * * * voluntarily unemployed is a question of fact for the trial court. Absent an abuse of discretion that factual determination will not be disturbed on appeal." *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218

(1993).

{¶ 9}     As the Supreme Court of Ohio determined:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable.  (Internal citation omitted).  It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision.  It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.  *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

After reviewing the record and applicable law, we find no abuse of discretion here.

{¶ 10}   In assessing voluntary unemployment and the imputation of income, we have noted that a trial court should consider the factors set forth in R.C. 3119.01(C)(11). *Gregory v. Gregory*, 172 Ohio App.3d 822, 825, 2007-Ohio-4098, 877 N.E.2d 333 (2d Dist.).   Among other things, "[t]hose factors include what the parent would have earned if fully employed, prior employment experience, education, physical, and mental disabilities, if any, and availability of employment in the area." *Id*.  In *Robinson v. Robinson*, 168 Ohio App.3d 476, 2006-Ohio-4282, 860 N.E.2d 1027 (2d Dist.), we explained, "[T]he court is not required to determine whether it was the obligor's subjective purpose to avoid his support

obligation." Rather, the only reasons relevant to a finding of voluntary unemployment are those set out in R.C. 3119.01(C)(11)(a)(i) through (x) which are as follows:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) Any other relevant factor.

{¶ 11} This court has recognized that a drop in income due to a voluntary choice "does not necessarily demonstrate voluntary underemployment." *Woloch v. Foster*, 98 Ohio App.3d 806, 811, 649 N.E.2d 918 (2d Dist.1994). "The test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned." *Id*. "[T]o avoid the imputation of potential income, the parent

must show an objectively reasonable basis for terminating or otherwise diminishing employment. Reasonableness is measured by examining the effect of the parent's decision on the interests of the child." *Holt v. Troha*, 2d Dist. Greene No. 96-CA-19, 1996 WL 430866 (Aug. 2, 1996).

{¶ 12} "While a child support obligor may no longer be a completely 'free agent' in terms of having an unlimited range of employment choices due to the child support obligation, courts must consider that some reasonable choices which result in short-term consequential reductions in income may in the long-term substantially benefit the living standards of the children. There are times when a court must respect the reasonable choice of an obligor to attempt to better his or her life in the hope that such a choice will ultimately benefit the lives of the children." *Aldo v. Angle*, 2d Dist. Clark No. 09-CA-103, 2010-Ohio-2008, citing *Martin v. Custer*, 2d Dist. Darke No. 1317, 1993 WL 386249 (Sept. 29, 1993); see, also, *Koogler v. Koogler*, 2d Dist. Montgomery No. 16253, 1997 WL 435691 (July 18, 1997) (finding that an obligor was not voluntarily underemployed because he acted reasonably and in the long-term best interest of his children by switching from an unstable career in the glass industry to pursue a full-time career as an auctioneer).

{¶ 13} As we explained in *Palmer v. Palmer*, 2d Dist. Greene No. 94-CA-112, 1995 WL 396509 (June 14, 1995), "[t]he system for the determination and enforcement of child support obligations of parents who are separated or divorced * * * was never intended to shackle parents to jobs that they held at the time of divorce or separation, when child support amounts were originally ordered. Parents who are subject to support orders are as free as those who are not to adjust their employment to conform to their opportunities, and to

their disadvantages as well. However, they may not use their separation or divorce to avoid their responsibilities, and their children should not suffer from needs that would have been met by their parents had their marriage not ended or separation not ensued."

{¶ 14} Upon review, we conclude that the trial court did not abuse its discretion when it found that Kimberly was voluntarily unemployed for the purpose of imputing income to her in order to calculate her child support obligation. The record reflects that the trial court independently reviewed the record and considered the factors set forth in R.C. 3119.01(C)(11). Specifically, the trial court found that Kimberly is a speech pathologist with a master's degree. At the time of the parties' divorce, Kimberly was earning $89,440.00 per year working as a speech pathologist. At some point, Kimberly procured new employment as a speech pathologist working at Pro-Step in Columbus, Ohio. At Pro-Step, Kimberly testified that she worked between thirty to thirty-six hours per week at a rate of $43.00 an hour, earning approximately $67,000 per year. Kimberly was also earning $7.70 per hour while working between fifteen and twenty hours per week at JCPenny's Department Store. Kimberly earned an additional fifteen percent commission at JCPenny's which translated to earnings between $200.00 to $1500.00 per month.

{¶ 15} One day after Barry filed his motion to terminate the parties' shared parenting plan and a motion for reallocation of parental rights and responsibilities (May 11, 2012), Kimberley voluntarily quit her job at Pro-Step. Kimberley testified that she quit because she was being bullied by a co-worker. Kimberly also quit her job at JCPenny's around this same time. Even though she voluntarily left her position, Kimberley testified that she was receiving unemployment benefits at the time of the hearing.

{¶ 16}   In lieu of working, Kimberley testified that she was attending full-time classes at Walden University in a completely different field, forensic psychology.   Kimberly testified that she wished to work in a different career field which would enable her to support herself and her seven minor children.   Nevertheless, the trial court agreed with the recommendation of the magistrate and found that Kimberly had voluntarily terminated her employment and imputed income to her in the amount of $67,080.00 ($43.00 per hour x 30 hours per weeks x 52 weeks per year).

{¶ 17}   We note that while the burden of proof lies on the party seeking to impute income, Barry in the instant case, it was not necessary for him to testify regarding the requirements of R.C. 3119.01(C)(11) since Kimberly's testimony in this regard was clearly sufficient to establish that she was voluntarily unemployed.   Kimberly asserts that her case is similar to the case of *McLaughlin v. Kessler*, 12th Dist. Fayette No. CA2011-09-021, 2012-Ohio-3317, in which the appellate court found that the father offered no testimony which established that the mother was voluntarily unemployed for the purposes of imputing income for child support. *Id*.   The appellate court found that the mother was an unskilled worker who had last been employed in a temporary position in which she earned $8.25 per hour. *Id*. at ¶ 16.   The evidence adduced also established once the temporary employment ended, the mother applied for positions at a local laundromat, K-Mart, Wal-Mart, Dollar Tree, and Dollar General.   Unlike the mother in *McLaughlin*, Kimberly is trained in speech pathology and has a master's degree in the subject.   Moreover, Kimberly offered no testimony that she was actively searching for another job in her field, only that she was taking classes in forensic psychology, a field unrelated to speech pathology.   Unlike the

mother in *McLaughlin*, Kimberly's testimony was sufficient to establish that she was voluntarily unemployed.

{¶ 18} Upon review of the record, we agree with the trial court that Kimberley provided no evidence that she gave any consideration to her current obligation to support her children when she unilaterally decided to leave her employment at Pro-Step. Simply put, the evidence presented at the hearing on Barry's motion supports a finding that Kimberly did not have an objectively reasonable basis for quitting her job at Pro-Step for which she was trained and then enrolling in full-time college classes for training in a separate and distinct career field. Kimberly has a continuing responsibility to her minor children to provide support, and her decision to voluntarily quit her job in her chosen profession and attend classes in a totally different field evinces a failure to appreciate the gravity of her obligation in this regard. We note that in the report filed by the Guardian Ad Litem, it was noted that Kimberly had a history of putting her needs before the needs of her children in regards to her employment and career choices. Moreover, the trial court was free to find Kimberly's testimony to not be credible regarding her reasons for voluntarily leaving her position at Pro-Step.

{¶ 19} Thus, we cannot say that the trial court abused its discretion when it found that Kimberley was voluntarily unemployed and "did not appreciate the urgency of finding employment which would permit [her] to meet [her] support obligation" to the parties' seven minor children. *Muhammad v. Muhammad,* 2d Dist. Greene No. 2010-CA-32, 2011-Ohio-2187. Accordingly, it was not error for the trial court to impute income in the amount of $67,080.00 to Kimberly for the purposes of determining her child support

obligation to her seven minor children.

{¶ 20}   Kimberly's sole assignment of error is overruled.

{¶ 21}   Kimberly's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Erik R. Blaine
Sasha Alexa M. VanDeGrift
Jennifer J. Walters
Hon. Christopher Gee