[Cite as *Croucher v. Croucher*, 2016-Ohio-726.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| BETH ANN CROUCHER | : | |
| | : | Appellate Case No. 2015-CA-43 |
| Plaintiff/Appellee | : | |
| | : | Trial Court Case No. 13-DR-198 |
| v. | : | |
| | : | (Domestic Relations Appeal from |
| STEVEN DAVID CROUCHER | : | Common Pleas Court) |
| | : | |
| Defendant/Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of February, 2016.

. . . . . . . . . . .

JENNIFER L. BROGAN, Atty. Reg. No. 0075558, Bieser, Greer & Landis LLP, 400 PNC Center, 6 North Main Street, Dayton, Ohio 45402-1908
    Attorney for Plaintiff-Appellee

DAVID M. McNAMEE, Atty. Reg. No. 0068582, and MATTHEW J. BARBATO, Atty. Reg. No. 0076058, McNamee Law Office, LLC, 2625 Commons Boulevard, Suite A, Beavercreek, Ohio 45431
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Steven Croucher appeals from a final judgment and decree of divorce rendered in the Greene County Court of Common Pleas, Domestic

Relations Division. He contends that the trial court abused its discretion by imputing income to him with regard to calculating child support, and that the trial court abused its discretion by denying his request for spousal support.

{¶ 2} We conclude, based upon the record before us, that the trial court did not abuse its discretion. Accordingly, the judgment of the trial court is Affirmed.

## I. Factual Background

{¶ 3} Steven and Beth Croucher were married in 1994. They have three minor children born of the marriage. Ms. Croucher sued for divorce in August of 2013. Mr. Croucher answered and counterclaimed, asking for spousal support. The parties reached an agreement regarding all issues except spousal support, child support, and the income tax dependency exemption for the minor children.

{¶ 4} At the final hearing on the contested issues, Mr. Croucher testified that he has a Bachelor's Degree in Management Information Systems, as well as a Master's in Business Administration. He had been employed by Verizon, earning $62,000 per year, but was laid off in August 2010, when Verizon initiated a workforce reduction. Mr. Croucher received unemployment benefits, and also received severance pay from Verizon.

{¶ 5} Mr. Croucher admitted that Verizon offered its employees reemployment services, which he did not utilize. He testified that he signed up with three different websites for employment services. He testified that he also used three different employment headhunters. Mr. Croucher did not have any documentation to verify his utilization of those services. He charged over $4,000 to a joint credit card for continuing

education, but he failed to follow through when he did not take the certification test.

**{¶ 6}** Mr. Croucher has been employed on a part-time basis since June 2012 with the City of Beavercreek as an assistant for the Public Administrative Service Director. He testified that he works an average of 26 hours per week, earning annual wages of $8,471.52. He also receives approximately $3,000 per year from an inheritance.

**{¶ 7}** Ms. Croucher presented the testimony of Kenneth Manges, a vocational specialist expert, who conducted an evaluation of Mr. Croucher. Manges testified that based upon Mr. Croucher's education and experience, he is qualified for work as a project manager in computer technology. He testified that entry level salaries in this field start at $46,000 and range up to $67,000, based upon prior experience. Manges testified that Mr. Croucher's earning capability would fall into the middle of that range. Manges also testified that there are over a thousand jobs currently available in the Dayton area that would meet Mr. Croucher's educational and experiential background, and that would provide the salary range previously mentioned. Finally, Manges testified that the average time to obtain employment in Mr. Croucher's situation is 32.3 weeks.

**{¶ 8}** Ms. Croucher is currently employed as a nurse practitioner with the Ohio State University. She works 36 hours per week and earns $59,000 per year. She also works as an adjunct professor at Wright State University, earning $11,100 per year.

**{¶ 9}** Ms. Croucher is the residential parent for the children. She provides the medical insurance for them, at an annual cost of $5,064. One of the children has a rare genetic disorder rendering him incapable of performing daily living activities on his own. He receives professional therapy services both in and out of the home.

**{¶ 10}** Following the hearing, the trial court rendered a decision finding that Mr.

Croucher was voluntarily underemployed in terms of both hours and wages. The court found that Mr. Croucher was capable of earning $56,050 annually, and utilized this amount in setting his child support obligation. The trial court further found that Mr. Croucher's request for spousal support was without merit. Finally, the trial court awarded the dependency exemption for all three children to Ms. Croucher for 2014, because Mr. Croucher did not contribute to their care that year. For the year 2015 and thereafter, the court ordered the parties to alternate the exemption for the two older children. The court awarded the dependency exemption for the child with special needs to Ms. Croucher.

{¶ 11} Mr. Croucher appeals.

## II. Evidence in the Record Supports the Trial Court's Finding that Mr. Croucher Is Underemployed and the Trial Court's Imputation of Income to him

{¶ 12} Mr. Croucher's First Assignment of Error states as follows:

THE TRIAL COURT ERRED WHEN IT FOUND DEFEDANT WAD [SIC] UNDEREMPLOYED AND IMPUTED INCOME TO HIM IN THE AMOUNT OF $56,050.00 WHEN IT CALCULATED CHILD SUPPORT.

{¶ 13} Mr. Croucher contends that the trial court abused its discretion by concluding that he was voluntarily underemployed, and by imputing to him an annual income of $56,050. In support, he argues that he presented an objectively reasonable basis explaining his current earnings, and that the trial court should not have imputed additional income to him.

{¶ 14} "[T]he question whether a parent is * * * voluntarily underemployed is a

question of fact for the trial court. Absent an abuse of discretion that factual determination will not be disturbed on appeal." *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993). The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable

{¶ 15} In assessing voluntary underemployment and the imputation of income, a trial court should consider the factors set forth in R.C. 3119.01(C)(11). *Gregory v. Gregory*, 172 Ohio App.3d 822, 2007-Ohio-4098, 877 N.E.2d 333, ¶ 10 (2d Dist.). Those factors include the following:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

**{¶ 16}** "[T]o avoid the imputation of potential income, the parent must show an objectively reasonable basis for terminating or otherwise diminishing employment. Reasonableness is measured by examining the effect of the parent's decision on the interests of the child." *Holt v. Troha*, 2d Dist. Greene No. 96–CA–19, 1996 WL 430866 (Aug. 2, 1996).

**{¶ 17}** The trial court considered the appropriate factors in determining that Mr. Crouch is voluntarily underemployed. While recognizing that he was involuntarily let go from Verizon, the court noted that he has had almost five years in which to find full-time employment appropriate to his education and experience. The trial court was free to disbelieve Mr. Crouch's claim that he had utilized services to find a job. The trial court was also free to credit the testimony of the expert vocational specialist who testified that there were over one thousand appropriate jobs in the Dayton area in Mr. Crouch's field, and that the average time for finding such a job is just over thirty weeks.

**{¶ 18}** We conclude that the trial court did not abuse its discretion in finding that Mr. Croucher is underemployed, and in imputing income to him. The First Assignment of Error is overruled.

### III. The Record Does Not Support a Conclusion that the Trial Court Abused its Discretion in Denying Mr. Croucher's Request for Spousal Support

**{¶ 19}** Mr. Crouch's Second Assignment of Error states:

THE TRIAL COURT ERRED WHEN IT FOUND DEFEDANT WAD [SIC] UNDEREMPLOYED AND IMPUTED INCOME TO HIM IN THE AMOUNT OF $56,050.00 WHEN IT OVERRULED HIS REQUEST FOR SPOUSAL SUPPORT.

{¶ 20} Mr. Croucher contends that the trial court erred by denying his request for spousal support.

{¶ 21} Pursuant to R.C. 3105.18, "the court of common pleas may award reasonable spousal support to either party." R.C. 3105.18(B). When determining whether spousal support is appropriate and reasonable, the court must consider the following factors set forth in R.C. 3105.18(C)(1):

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties * * *;

(j) The contribution of each party to the education, training, or earning ability of the other party * * *;

(k) The time and experience necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 22} These factors relate to the obligee spouse's need for, or the obligor spouse's ability to pay, support. *Norbut v. Norbut*, 2d Dist. Greene No. 06-CA-112, 2007-Ohio-2966, at ¶ 21.

{¶ 23} The trial court considered these factors in determining that Mr. Croucher's request for spousal support was neither appropriate nor reasonable. The trial court found, based upon evidence in the record, that the parties sold the marital residence, and each received approximately $30,000 from the sale proceeds. Both parties have incomes. While Mr. Croucher's income is lower than Ms. Croucher's, he is able to meet his monthly expenses. The parties are close in age, and both are in good health, both

mentally and physically. Both parties have retirement benefits, and they opted not to share in each other's account. The record supports a finding that the parties had a modest standard of living during the marriage. Both parties have advanced degrees. Ms. Croucher has a student loan debt of over $50,000. Neither party needs any additional training or education for employment. The trial court also noted that Mr. Croucher has had adequate time to find a job that pays more than minimum wage.

**{¶ 24}** The trial court enjoys wide latitude in awarding spousal support, and its decisions are reversible only for an abuse of discretion. *Miller v. Miller*, 2d Dist. Montgomery No. 14540, 1994 WL 730560, *1 (Dec. 28, 1994). Based upon this record, we conclude that the trial court did not abuse its discretion in this regard. Accordingly, the Second Assignment of Error is overruled.

## IV. Conclusion

**{¶ 25}** Both of Mr. Crouch's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Jennifer L. Brogan
David M. McNamee
Matthew J. Barbato
Hon. Steven L. Hurley