[Cite as *Page v. Page*, 2022-Ohio-411.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STEFANIE P. PAGE | : | |
| | : | |
| First Petitioner-Appellant | : | Appellate Case No. 2021-CA-47 |
| | : | |
| v. | : | Trial Court Case Nos. 2017-DS-96 |
| | : | |
| MATTHEW A. PAGE | : | (Domestic Relations Appeal) |
| | : | |
| Second Petitioner-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of February, 2022.

. . . . . . . . . . .

JONATHAN F. HUNG, Atty. Reg. No. 0082434, 800 Performance Place, 109 North Main Street, Dayton, Ohio 45402
     Attorney for First Petitioner-Appellant

TIMOTHY R. SAUNDERS, Atty. Reg. No. 0098595, 209 East Stroop Road, Kettering, Ohio 45429
     Attorney for Second Petitioner-Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant, Stefanie P. Page, appeals from a judgment granting the motion of Appellee, Matthew A. Page, to reduce his child support.[1]  In support of her appeal, Stefanie contends that the trial court abused its discretion by failing to find that Matthew was voluntarily underemployed.   Stefanie also argues that the court erred by making the support reduction retroactive to the date when Matthew's motion was filed.

{¶ 2} After considering the record and applicable law, we conclude that the trial court abused its discretion in finding that Matthew was not voluntarily underemployed. First, the court incorrectly referenced the particular industry in which Matthew was employed.   The court then improperly took judicial notice of a fact about that industry, in violation of Evid.R. 201(B).   As a result, the court's decision was not supported by sound reasoning.

{¶ 3} In addition, the court erred in making the support modification effective as of the date that Matthew filed his motion.   When Matthew filed his motion to modify child support, the circumstances were unchanged, both as to his income and his parenting time, from what they were when a prior agreed support order was filed.   The only event of significance to the litigation, if any, was Matthew's choice to take a position paying substantially less.   This choice occurred nearly a year after his motion was filed. Consequently, if any modification in support were to be made, the latter date should have been used.   The court's decision in this regard, therefore, was based on unsound reasoning.

{¶ 4} Accordingly, the judgment will be reversed, and this cause will be remanded

---

[1] Because the parties have the same last name, we will refer to them by their first names.

for further proceedings.

## I. Facts and Course of Proceedings

{¶ 5} On February 3, 2017, the parties filed a petition for dissolution, seeking dissolution of their marriage. They had married in August 2002 and had two children, C.P., born in 2009, and K.P., born in 2014.

{¶ 6} As part of the proceedings, the parties filed a separation agreement and a joint shared parenting agreement outlining their respective rights and obligations. An amended separation agreement was filed on March 16, 2017, amending only the length of spousal support, which was reduced from an indefinite term to four years.

{¶ 7} On March 20, 2017, the trial court filed a decree of dissolution, approving and incorporating the amended separation agreement and joint shared parenting plan. Under these agreements, the parties shared joint custody and were both residential parents, with Stefanie being the residential parent for school purposes. Matthew was obligated to pay $600 per month in spousal support and $340.50 per month in child support for each child. His total monthly obligation, therefore, was $1,281 (before processing fees). At the time of the dissolution, Matthew's base salary was $33,800 per year, and his yearly overtime, bonuses, and commissions averaged $17,791, for a total income of $51,591. Shared Parenting Plan (Feb. 3, 2017), p. 15. Stefanie's yearly income was listed as $26,096, but she had notified Matthew in the amended separation agreement that she had received and intended to accept a new employment offer that would increase her gross salary to $55,000 per year. Amended Separation Agreement (Mar. 16, 2017), p. 3. She had also filed an amended affidavit of income and expenses

on March 17, 2020, which reflected that her income would be $65,000, and this amount was referenced at the March 20 hearing.

{¶ 8} In January 2018, Stefanie filed a notice of intent to relocate from her current residence. Matthew objected and also asked to modify the shared parenting agreement. A mediation was then held, and the parties signed a memorandum of understanding on June 14, 2018, modifying the shared parenting decree to provide for a specific school district for the children and increasing Matthew's parenting time to 43%. Defendant's Ex. A, p. 1. The agreement further provided that Matthew's child support would be $425.60 per child per month, for a total of $851.20, and that this was "a 20% deviation as a result of additional parenting time for Dad." *Id.*[2] As indicated in footnote 2, Stefanie also agreed at the time to reduce her spousal support from $600 to $200 per month and to eliminate Matthew's existing obligation to pay for childcare.

{¶ 9} On July 16, 2018, the parties filed an agreed order modifying the shared parenting decree as indicated above. Matthew's parenting time was increased to 43%, and his child support was increased to $425.60 per month per child when health insurance was provided, for a total of $851.20 per month. Agreed Order (July 16, 2018), p. 2. Both

---

[2] This statement makes no sense, since a 20% deviation due to more parenting time would normally seem to result in a reduction of $132.20 per month, rather than an increase in support of the same amount ($681 plus $132.20 is $851.20). Nonetheless, this is what the parties said. We do note that during the same mediation, Stefanie agreed to reduce the $600 spousal support obligation to $200 per month, and the upward revision may have been intended to balance this out. Specifically, Matthew's total obligation after the mediation was $1,051.20 versus the $1,281 he had been paying previously. This was an overall reduction in his support obligations of about 18%. ($1,281 minus $1,051.20 equals $229.80; $229.80 divided by $1,281 equals .1793%.) This structure was possibly due to tax considerations, but the record is silent in this regard. Furthermore, Matthew was also relieved of his obligation to pay up to $12,000 per year in childcare expenses. All these amounts, added together, resulted in a significant decrease in Matthew's financial obligations.

parties and their attorneys signed this order.

{¶ 10} The July 16, 2018 order did not include the spousal support reduction. However, on October 4, 2018, the parties filed an agreed order reducing Matthew's spousal support obligation to $200 per month, based on Stefanie's increased income. Agreed Order (Oct. 4, 2018), p. 1. As noted, this reduced Matthew's total obligation to $1,051.20 per month, which was a $229.80, or nearly 18%, reduction in his obligation.

{¶ 11} This was not the end of the parties' disputes, however. On April 8, 2019, Matthew filed a motion to reduce child support and to terminate or reduce spousal support. His request to reduce child support was based on the fact that the parties shared nearly equal parenting time and split expenses equally. The request to reduce or terminate spousal support was based on the fact that Stefanie's yearly income exceeded Matthews by about $13,000. Motion to Modify Support (Apr. 8, 2019), p. 1-2.

{¶ 12} On May 31, 2019, Stefanie filed a motion to modify the shared parenting plan to provide Matthew with the standard order of parenting time for a non-residential parent. This motion was based on allegations that Matthew resided near a known sexual predator, and that C.P. had begun to show signs of parental alienation. Motion to Modify Parenting Plan (May 31, 2019), p. 1.

{¶ 13} Matthew followed this with a June 11, 2019 motion for contempt based on Stefanie's failure to seek mediation before filing her motion. He also asked the court to terminate child support and to require Stefanie to pay him child support.[3] The parties

---

[3] Both parents were required to seek mediation for matters pertaining to the shared parenting plan, which included both child support and parenting provisions. Plaintiff's Ex. 6, Shared Parenting Plan, p. 8. However, *neither* party sought mediation after the first issue that was mediated in June 2018.

then filed a joint motion on August 26, 2019, asking the court to appoint a guardian ad litem ("GAL"). After the first GAL had a conflict, the court appointed a substitute GAL.

{¶ 14} A magistrate held evidentiary hearings on six days, including August 7 and December 2, 2019, and February 24, March 10, March 12, and August 6, 2020. After the final hearing, both sides filed post-trial briefs. On October 15, 2020, the magistrate filed a decision overruling the motion to modify the shared parenting plan. Then, based on the time of possession of the children, the magistrate deviated from the recommended amount of $443.15 and reduced Matthew's child support to $252.60 and cash medical support of $22.38, for a total of $274.98 per month, plus a 2% percent processing fee. The effective date was April 8, 2019. The motion to terminate or reduce spousal support had previously been withdrawn, and the magistrate overruled the remaining motions before it, including the contempt motion.

{¶ 15} On October 23, 2020, Stefanie filed objections to the magistrate's decision. Her objections were limited to the magistrate's decision to backdate the support reduction to April 8, 2019, and the magistrate's failure to find that Matthew was voluntarily underemployed. After the objections were filed, the court discovered that the fifth day of testimony on March 12, 2020, had not been recorded. As a result, the court allowed the attorneys to submit their recollections of the testimony to each other and agree on a stipulation. If an agreement could not be reached, the magistrate would settle the issue. Order (Apr. 22, 2021), p. 1-2.

{¶ 16} After the attorney review and a status conference, the trial court filed an entry noting that the parties had stipulated that the missing testimony was inconsequential as it did not pertain to the filed objections. The court also found the parties had waived

alternative options for supplementing the record. Finally, the court said it would conduct a de novo review of the entire record. Order (June 9, 2021), p. 1-2. The parties then filed briefs concerning Stefanie's objections to the magistrate's report.

{¶ 17} On July 13, 2021, the trial court filed a decision overruling Stefanie's objections. Stefanie timely appealed from the court's decision, and we have expedited the appeal.

## II. Voluntary Unemployment

{¶ 18} Stefanie's first assignment of error states that:

The Trial Court Erred When It Concluded That Ms. Page Failed to Meet Her Burden of Proving That Mr. Page Was Voluntarily Underemployed Where His Decision to Change Jobs Was Unilateral, Voluntary, and Contrary to the Financial Interests of Him and His Children.

{¶ 19} Under this assignment of error, Stefanie contends that the trial court erred by rejecting her claim that Matthew was voluntarily underemployed because he took a job that substantially reduced his income. According to Stefanie, the magistrate failed to address this point. Stefanie further argues that the trial court's decision after objections were filed was improperly based on the court's reference to "common knowledge" about the automobile industry.

{¶ 20} Before discussing these matters, we will outline the applicable standards of review.

## A. Review Standards

{¶ 21} Child support orders are reviewed for abuse of discretion. *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9. Consistent with this principle, "the question whether a parent is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993).

{¶ 22} An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). However, "most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

## B. Applicable Law

{¶ 23} As noted, the parties originally entered into a shared parenting agreement, and the court granted their petition for a dissolution. R.C. 3105.65(B) states that "[a] decree of dissolution of marriage has the same effect upon the property rights of the parties, including rights of dower and inheritance, as a decree of divorce." This subsection further provides that in dissolution cases, a trial court "has full power to enforce

its decree and retains jurisdiction to modify all matters pertaining to the allocation of parental rights and responsibilities for the care of the children, to the designation of a residential parent and legal custodian of the children, to child support, to parenting time of parents with the children, and to visitation for persons who are not the children's parents." *Id.*

{¶ 24} Under R.C. 3105.21(C), courts that modify support orders must comply with the requirements in R.C. Chaps. 3119, 3121, 3123, and 3125. R.C. 3119.79 allows courts to modify child support where a "substantial change of circumstances" exists "that was not contemplated at the time of the issuance of the original child support order or the *last modification* of the child support order." (Emphasis added.) R.C. 3119.79(C). "A child support computation difference of 10 percent more or less from the prior order will constitute a 'change of circumstance substantial enough to require a modification of the child support amount.'" *Mossing-Landers v. Landers*, 2016-Ohio-7625, 73 N.E.3d 1060, ¶ 30 (2d Dist.), quoting R.C. 3119.79(A).

{¶ 25} This case was initially brought before the court by Matthew, who requested a modification in child support because the parties shared nearly equal parenting time (the actual percentage was around 43 percent for Matthew and 57 percent for Stefanie). However, the most recent child support order, to which the parties had agreed, was made when the parenting time had been expanded to that amount of time. Matthew also

alleged that the parties shared equally in the children's expenses.[4]

{¶ 26} When the dissolution was granted in 2017, Matthew had three days of parenting time in a two-week period versus Stefanie's 11 days of parenting time (a ratio of about 21.4% versus 78.6%, exclusive of holidays and a two-week vacation period allotted to each parent). Under the July 16, 2018 order, Matthew's parenting time was increased to 43%, and child support was calculated based on the increased time. Agreed Order (July 16, 2018), p. 2 and 4; Defendant's Ex. A, p. 1. Thus, the increase in parenting time was not a valid reason to ask for a modification. And, as indicated, the alleged equal payments of expenses did not exist.

{¶ 27} Furthermore, when the motion was filed, Matthew was making the same amount of money or more than he was when the dissolution decree was filed. Matthew's base salary during 2017, 2018, and 2019 was $33,800. He also received commissions, overtime, and incentives from manufacturers for those years that provided him with income of $57,826 in 2017, $57,826 in 2018, and around $60,000 in 2019. Tr. 3 at p. 34-37. Thus, Matthew's income had not been reduced so as to create a "substantial change" of circumstances; instead, it had increased.

{¶ 28} In the motion seeking modification, Matthew did raise the fact that Stefanie's

---

[4] According to the testimony, this was untrue. Under the shared parenting agreement, Matthew was to pay the first $100 of any medical, dental, and optical expenses; other such expenses were to be shared equally. The parties further agreed that they would equally share costs for any extracurricular activities. Shared Parenting Plan (Feb. 3, 2017), p. 3, 6, and 7. From the beginning in 2017, Matthew paid no childcare expenses, almost no expenses for extracurricular activities or school lunches, and had not paid medical expenses that were incurred for the children's medical, dental, and psychological care, other than a couple of co-pays. Transcript of Proceedings (Day One) ("Tr. 1"), p. 44, 55, 56, and 59; Tr. 2, p. 38, 40, 43, 45-46, 49, 52, and 58; Tr. 3, p. 20, 57, and 60. (The six hearing transcripts are not sequentially numbered, so we will refer to them as "Tr.", followed by the number of the particular transcript, i.e., Tr. 1, Tr. 2, and so on.)

income had increased. This was mentioned in the context of his motion to reduce or eliminate spousal support. Motion to Modify Support (Apr. 8, 2019), p. 1-2. However, when the separation agreement and amended separation agreement were filed, Matthew was aware that Stefanie had accepted a new job that she expected would raise her gross income to $55,000. Separation Agreement (Feb. 2, 2017), p. 3; Amended Separation Agreement (Mar. 16, 2017). Despite this fact, the parties used Stefanie's current gross income of $26,096 (together with her expected spousal support of $7,200) on the original child computation worksheet to calculate support. *See* Sole Residential Parent or Shared Parenting Order (Feb. 3, 2017), p. 1-2.

{¶ 29} At the time of the dissolution hearing in 2017, Stefanie had disclosed to Matthew that her income was $65,000, and he made no objection at the hearing. Tr. 2 at p. 8 and 14. Stefanie had also filed an amended affidavit of income and expenses with the court on March 17, 2017, indicating that her income was $65,000. Matthew stipulated this fact at the hearings held on the motion to reduce support, and he would have been aware of Stefanie's income when the dissolution was granted. Plaintiff's Ex. 1, Amended Affidavit of Income and Expenses (Mar. 17, 2017), p. 2, and Tr. 2 at p. 10 and 13.

{¶ 30} When the mediation occurred on June 14, 2018, and when the amended support order was filed in July 2018, Stefanie was still employed at the same place (Clark Preparatory Academy) ("CPA"), and her salary was still essentially the same. Tr. 2 at p. 15-16.[5] Stefanie remained in that position until April 2019, when she resigned and took

---

[5] Stefanie also received a car allowance at CPA, which provided her with an additional $2,400 per year, so her total gross income was $67,400. Tr. 2 at p. 42.

a job with Clark County Educational Services Center ("CCESC"). Her contract at CCESC began in August 2019, at a salary of $60,257. *Id.* at p. 15-16 and 27. Thus, in April 2019, the parties were in essentially the same position they were at the time of the dissolution. They were also in the same position as when the last support order was filed in July 2018, and there was no conceivable basis for modifying support.[6]

**{¶ 31}** In fact, Matthew was in a better position than he had been when the dissolution was granted, since his spousal support had been reduced by $400 per month, and his responsibility for up to $12,000 per year in daycare expenses had been eliminated.[7] Specifically, beginning in July 2018, Stefanie took on responsibility for childcare expenses. According to her testimony, between August 2018 and May 2019, she spent around $76 to $96 dollars a month on preschool and $90 to $120 weekly on other daycare. Tr. 2 at p. 45. Finally, Matthew made more money in 2019 than in the previous two years.

**{¶ 32}** Because the parties filed several motions, including a motion to eliminate spousal support, a motion to make Stefanie an obligor, and a motion to modify the shared parenting agreement, the case continued for more than two years, including six hearings lasting from August 2019 through August 6, 2020 – almost 16 months after Matthew's

---

[6] Stefanie may, in fact, have been making less money when Matthew's motion to reduce support was filed, since her employment with CCESC did not begin for several months. However, the hearings did not disclose information about her gross income for 2019 and the court did not calculate child support based on the parties' 2019 earnings. In 2017, Stefanie's adjusted gross income was $58,615, and in 2018, her adjusted gross income was $57,475. This income included spousal support payments from Matthew. Tr. 2 at p. 15, 25, and 27.

[7] To that end, the June 14, 2018 Memorandum of Understanding said that "Mom is responsible for the child care expenses, *as these have been factored into the child support computation worksheet.*" (Emphasis added.) Defendant's Ex. A at p. 1.

motion was filed. Other than a decrease in the amount of child support, the end status of the parties remained the same, other than that Matthew was ordered to reimburse Stefanie for 34.54% of the uninsured medical expenses that she had paid. Decision and Final Judgment Entry (July 13, 2021), p. 8. Matthew had previously not paid these expenses, which amounted to around $6,000 to $8,000. Tr. 2 at p. 38.

{¶ 33} Nearly a year after Matthew filed the motion for reduction, he stated, during a hearing on February 24, 2020, that he would be taking an entry level position as an accounting technician at Defense Electronics Supply Center ("DESC") in Columbus, Ohio. Tr. 3 at p. 12. His starting date was March 16, 2020, and his salary would be $36,064. *Id.* at p. 13. This was about a 40% reduction in his income. According to Matthew, the new position would let him spend more time with his children because he would not have to work weekends or overtime. Further, he did not then have retirement benefits, and the new position had a pension plan as well as the ability to set up a 401K account.[8] Educationally, Matthew had a bachelor's degree in business administration and had worked in his previous position for at least 12 years.

{¶ 34} During the hearings and in a post-trial brief, Stefanie raised the issue of voluntary underemployment. In its decision, the magistrate first overruled the motion to modify the shared parenting plan. The magistrate then found, using the parties' "current" income for purposes of calculating support, that the change exceeded ten percent. Magistrate's Decision and Order (Oct. 15, 2020), p. 8. The magistrate then deviated from the calculation based on the amount of parenting time (even though that had already

---

[8] Matthew's current employer had a 401K plan with matching contributions by the employer; Matthew stated that he lacked disposable income to contribute to it. Tr. 3 at p. 73-74.

been done by 20% in the prior order) and ordered that Matthew pay $252.60 plus $22.38 in cash medical support, plus 2% poundage. *Id.* In addition, the magistrate made the change effective April 8, 2019 (the date Matthew filed his motion for a reduction). *Id.*

{¶ 35} The magistrate did not address the issue of voluntary underemployment. Stefanie objected to the decision, but she raised only issues pertaining to voluntary underemployment and the order's effective date, not the part of the decision concerning the request to modify shared parenting.

{¶ 36} The trial court filed a decision on July 13, 2021, overruling Stefanie's objections. With respect to the issue of voluntary underemployment, the court's sole comment in finding Matthew's job change "objectively reasonable," was that:

> In retrospect, it is common knowledge in today's economy that the automobile industry is currently suffering as a result of the decline in automobile sales and it is at least, for the immediate future, fortuitous that Mr. Page decided to change careers at the time that he did.

Decision and Final Judgment Entry (July 13. 2020), at p. 7.

{¶ 37} In arguing that the trial court's decision was an abuse of discretion, Stefanie first argues that facts and law indicate that Matthew was voluntarily underemployed. She further contends that the trial court incorrectly stated that Matthew was in automobile sales when he was not, and that the court also erred in taking judicial notice of the state of the auto economy.

{¶ 38} In computing child support, courts initially consider the parents' gross income. R.C. 3119.01(B)(9) defines "gross income" as either:

> (a) For a parent who is employed to full capacity, the gross income

of the parent;

(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

{¶ 39} Courts decide whether a parent is voluntarily underemployed "based upon the facts and circumstances of each case." *Rock*, 67 Ohio St.3d 108, 616 N.E.2d 218, at syllabus. Once the court decides that a parent is voluntarily unemployed or underemployed, R.C. 3119.01(C)(17)(a)(i)-(xi) sets out various factors to be considered in calculating the amount to be imputed.[9]

{¶ 40} "Voluntary unemployment or underemployment does not warrant a downward modification of a child support obligation." *Albers v. Albers*, 2d Dist. Greene No. 2012-CA-41, 2013-Ohio-2352, ¶ 26. "To warrant modification, the change of circumstance generally must not be the result of voluntary actions." *Williams v. Williams*, 10th Dist. Franklin No. 92AP-438, 1992 WL 246020, *1 (Sept. 24, 1992) (parents who place themselves in a position of being unavailable for gainful employment are not entitled to relief); *Kreuzer v. Kreuzer*, 2d Dist. Greene No. 2000-CA-43, 2001 WL 468406, *5 (May 1, 2001).

{¶ 41} The burden of proof is on the party who claims the other parent is voluntarily underemployed. *Matlock v. Matlock*, 2d Dist. Montgomery No. 28278, 2019-Ohio-2131, ¶ 19, citing *Ketchum v. Coleman*, 2d Dist. Miami No. 2013-CA-28, 2014-Ohio-858, ¶ 17. Nonetheless, "[a] parent seeking to avoid imputation of income ' "must show an objectively reasonable basis for terminating or otherwise diminishing employment.

---

[9] Effective March 28, 2019, R.C. 3119.01(C)(11) was amended and renumbered as R.C. 3119.01(C)(17), without substantive change. *See* Sub. H.B. 366, 2018 Ohio Laws File 76.

Reasonableness is measured by examining the effect of the parent's decision on the interests of the child." ' " *Id.* at ¶ 25, quoting *Croucher v. Croucher*, 2d Dist. Greene No. 2015-CA-43, 2016-Ohio-726, ¶ 16. (Other citation omitted.)

{¶ 42} Here, the reduction in Matthew's income was significant. As indicated, the trial court did not give any reasons for failing to impute income, other than making a general comment about the automobile industry. However, Matthew was not employed in automobile sales; he was employed in selling tractors, lawn mowers, and off-road vehicles. Tr. 3 at p. 79. There is no indication in the record that revenues from these kinds of sales equate with automobile sales in any way. Furthermore, the state of the automobile industry (whatever it might have been) was not a proper subject for judicial notice. *Compare Verbillion v. Enon Sand & Gravel, LLC*, 2d Dist. Clark No. 2021-CA-1, 2021-Ohio-3850, ¶ 66 (rejecting a trial court's personal opinion as a proper subject of judicial notice in the absence of evidence supporting the court's remarks).

{¶ 43} Under Evid.R. 201(B), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The trial court did not refer to any such sources, nor did it identify how or why such a concept was generally known in the jurisdiction. Notably, Matthew did not even mention the state of his industry, let alone that of the automobile industry as a reason for leaving his employment.

{¶ 44} Some courts have held that a trial court's "failure to make an express finding of underemployment is not automatically reversible error" if the reviewing court can infer the reasoning from the record. *E.g., Bruns v. Green*, 10th Dist. Franklin No. 18AP-259,

2019-Ohio-2296, ¶ 27, citing *Dach v. Homewood*, 10th Dist. Franklin No. 14AP-502, 2015-Ohio-4191, ¶ 57.   However, the trial court's findings here were incorrect.   The record was not devoid of express findings.

{¶ 45} Accordingly, the trial court's decision was not based on sound reasoning and was an abuse of discretion.   Because the court abused its discretion, the first assignment of error is sustained.

### III.   Backdating of Revised Child Support Obligation

{¶ 46} Stefanie's second assignment of error states that:

> The Trial Court Prejudicially Erred When It Affirmed the Magistrate's Decision Backdating the New Child Support Obligation to April 8, 2019 Because Mr. Page Began His New Employment on March 16, 2020

{¶ 47} Under this assignment of error, Stefanie contends that the trial court abused its discretion by making the lowered support amount retroactive to the date that Matthew filed his motion.   This argument is based on the fact that Matthew did not take the new position until March 16, 2020, almost a year after the motion to reduce support was filed. In the meantime, Matthew actually earned more money than he had when support was initially calculated.   Matthew's response is that Stefanie also took a reduced salary from her initial salary, and her income was required to be used as well in calculating the new support amount.

{¶ 48} Technically, this assignment of error is moot since we are reversing the trial court's judgment.   However, because the case is being remanded, we will address it anyway.   As noted, we review child support orders for abuse of discretion.   *Morrow,* 138

Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, at ¶ 9.

{¶ 49} In overruling Stefanie's objection to the date on which the reduction in support was granted, the trial court noted that both parties' income had changed "in different degrees" when they changed jobs. Decision and Final Judgment Entry (July 13, 2021), at p. 6. The court then said:

> Taking into account the fact that Ms. Page changed employment in April 2019 and Mr. Page filed his underlying Motion to reduce his child support in the same month, the Court finds that it is most equitable to utilize April 8, 2019 as the effective date for the modification of Mr. Page's child support obligation. To this end, the Court has not been provided with sufficient evidence to establish that there are special circumstances that dictate otherwise.

*Id.*

{¶ 50} "[A] trial court may, but is not required to, make a modification of support retroactive to the date the motion was filed." *Wright v. Reck*, 2d Dist. Miami No. 2001-CA-30, 2001 WL 1346038, *2 (Nov. 2, 2001). "Whether to make a modification of support retroactive to the date of the motion is a question left to the sound discretion of the trial court. * * * It will often be equitable to apply a modification retroactively to the date of the motion, due to the substantial amount of time that it frequently takes to dispose of motions to modify support obligations; on the other hand, a substantial arrearage or overage created by a retroactive modification can create a hardship to one of the parties." *Lightle v. Lightle*, 2d Dist. Champaign No. 2012-CA-8, 2012-Ohio-3284, ¶ 8, citing *Goddard-Ebersole v. Ebersole,* 2d Dist. Montgomery No. 23493, 2009-Ohio-6581, ¶ 9.

(Other citations omitted.)

{¶ 51} For the reasons previously mentioned, the trial court's reasoning in making the reduction effective on the date the motion was filed was based on unsound reasoning. As noted, the existing circumstances when the motion was filed would not have warranted a reduction in Matthew's support. Matthew's income was the same or more than it was when child support was previously modified, and no change in circumstances had occurred either to his income or to the amount of time he spent with the children. All that was considered in mediation in July 2018, when Stefanie reduced her spousal support and agreed to eliminate Matthew's obligation to pay for child care up to $12,000. Moreover, while Stefanie had incurred a slight reduction in income in April 2019 by taking a different teaching position, Stefanie was not the obligor and she did not seek additional support from Matthew.

{¶ 52} In choosing an alternate date, courts have looked for "special circumstances" like a significant date in the litigation. *E.g. Goddard-Ebersole* at ¶ 10 (rejecting trial court's choice because it did not relate to any significant event in the litigation). In the case before us, if a reduction in support had been warranted, it could only have been as of March 16, 2020, when Matthew took a position that paid 40% less than his previous salary. We are not saying a reduction was warranted or that Matthew was not voluntarily underemployed; we are simply indicating that this was the only event of significance to the litigation. Accordingly, the trial court's rejection of any special circumstances and its choice to use the date the motion was filed were not supported by sound reasoning. Accordingly, the second assignment of error is sustained.

## IV.  Conclusion

**{¶ 53}** Both of Stefanie's assignments of error having been sustained, the judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Jonathan F. Hung
Timothy R. Saunders
Hon. Thomas J. Capper